UNITED STATES *v.* INTERNATIONAL EXPEDITERS, INC., FOR WINSOR & NEWTON, INC.

**No. 8105.—**

Entry No. 782788.

Second Division, Appellate Term

(Decided April 3, 1952)

*Charles J. Wagner,* Acting Assistant Attorney General (*Samuel D. Spector* and *Daniel I. Auster,* special attorneys), for the appellant.

*Jordan & Klingaman* (*Edward F. Jordan* of counsel) for the appellee.

Before LAWRENCE, RAO. and FORD, Judges

RAO, Judge: This is an application filed pursuant to the provisions of title 28 U. S. C. § 2636 (a) for the review of a decision and judgment of a single judge, sitting in reappraisement, rendered March 1, 1951,

as Reap. Dec. 7963. The merchandise involved in this case consists of certain artists' colors, described in the invoice as "Studio Tubes Series 2." It was invoiced and entered at the list price thereof of 39 shillings per dozen tubes, less a discount of 40 per centum, plus the cost of cases (packing and woodwork) and was appraised at said list price, less a discount of 33⅓ per centum, plus the cost of cases (packing and woodwork) on the basis of cost of production, as defined in section 402 (f) of the Tariff Act of 1930. Said section 402 (f) provides as follows:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The case was submitted for decision upon a stipulation of facts which is recited in full in the opinion of the trial court, and need not be repeated here. Suffice it to say that the parties are agreed that cost of production is the proper basis for the appraisement of the involved merchandise and are at odds solely upon the item referred to in subdivision 4 of said section 402 (f), *supra,* as the addition for profit "which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration."

By the terms of the stipulation, it appears that the manufacturer of the merchandise at bar, whose business practices are typical and representative of all other manufacturers of merchandise of the same general character in the country of exportation, sells its products both for home consumption in the country of exportation, and for exportation throughout the world, to two classes of purchasers, namely, wholesalers and retailers. The price to each category of purchasers wherever they be located differs only with respect to the discount allowed from the list price of 39 shillings, the cost of packing

and cases being the same in all instances. Wholesalers receive a discount of 40 per centum; retailers, a discount of 33⅓ per centum.

The parties have further agreed that the entered value contains all of the elements specified in said section 402 (f), *supra*, for the ascertaining of cost of production including the profit which ordinarily is added, in the case of merchandise of the same general character when sold to wholesalers, whereas the appraised value includes all of such elements plus profit ordinarily added in the case of sales of such merchandise to retailers.

The stipulation also recites in terms of percentage the respective quantities of merchandise sold in the home market and for exportation both to the United States and to other countries, as well as the proportion of individual sales in each of said areas to each category of purchaser. In the home market where approximately 47 per centum of the total quantity was disposed of, sales to retailers predominated both numerically and quantitatively. In sales for export throughout the rest of the world, wholesalers received the greater quantity, and sales to them were more numerous. Of the total quantity of merchandise of the same general character sold all over the world, 67 per centum was sold at the entered price, 33 per centum at the appraised value. Of the total number of individual sales throughout the world, 63 per centum was sold at the appraised value, and 37 per centum at the entered value.

Upon the record so presented the trial court held that the profit ordinarily added is that derived from the major quantity of units sold, on the theory that the manufacturer obtained therefrom the greater financial return and the greater portion of profits. It being established that the greater quantity of the merchandise was sold to wholesalers, the entered value was sustained. The cases of *J. H. Cottman & Co.* v. *United States, United States* v. *J. H. Cottman & Co.*, 20 C. C. P. A. (Customs) 344, T. D. 46114; *United States* v. *Marine Products Co.*, 24 Cust. Ct. 615, Reap. Dec. 7830; and *F. W. Berk & Co., Inc.* v. *United States*, 16 Cust. Ct. 365, Reap. Dec. 6282, were cited in support of said conclusion.

Counsel for appellant contends here, as he did before the trial court, that the rule for determining "usual wholesale quantities" in the inquiry into foreign, export, and United States values applies with equal vigor to the finding of "the profit which ordinarily is added" in cost of production, and hence that the sole determinant of such profit is the major portion of all individual sales. This argument is predicated upon the proposition that the words "usual" and "ordinary" are synonymous, and since the dictionaries define "ordinarily" as "in most cases," section 402 (f) (4), *supra*, would read:

\* \* \* An addition for profit \* \* \* equal to the profit which ordinarily (in most cases) (usually) is added.

It is urged therefore that the "profit added by the manufacturer in most sales or the major portion of sales is the profit ordinarily added, as it is more indicative of the general practice of a manufacturer than determining the profit based upon quantity."

This argument might possess some validity if there were any authority for the substitution of the word "sales" for the word "cases." But the cost of production statute does not refer to "sales," and the phrase "in most cases" submits itself as readily to interpretation as "most units" or "major quantity" sold as it does to "most sales" or "the major portion of sales."

The fact remains that the merchandise at bar is ordinarily sold by the manufacturer to both wholesalers and retailers, according to the stipulation of the parties, and sales to either might properly indicate "the profit which ordinarily is added." Nevertheless, the language of the statute does not contemplate the addition of different amounts for profit, and it devolves upon this court to select which of two profits ordinarily received by the manufacturer shall be added.

In this connection, it is proper to consider what we believe to be a basic principle of business economics, namely, that the profit motive is the spark plug of all business endeavor in the Western World. The manufacturer counts the profit he receives as the measure of the success or the failure of his business. His concern is to produce and sell in quantity so that his margin of profit, actual, not percentage wise, shall be as great as it is possible for him to make it. Thus, from a manufacturer's standpoint, his ordinary profit is that derived from the sale of the greatest portion of his merchandise, and the number of sales required in the disposition of a minor portion of his products at a greater percentage profit, but a smaller realized profit, is not, in business practice, indicative of ordinary profit.

We think we should take cognizance of the fact that the manufacturer's emphasis is upon units sold, rather than upon sales made, and construe the phrase "the profit which ordinarily is added" in a manner which recognizes that business precept. As applied to the instant case, since the greater quantity of this merchandise was sold to wholesalers, with the consequent realization of the greater proportion of returns, sales to wholesalers should, in this case, constitute the basis upon which the profit ordinarily added is to be determined.

This conclusion accords with the view expressed in the case of *J. H. Cottman & Co.* v. *United States, United States* v. *J. H. Cottman & Co., supra,* wherein the court construed the cost of production provision of the Antidumping Act of 1921, which required an addition for profit "equal to the profit which is ordinarily added  *  *  * by manufacturers or producers in the country of manufacture or

production who are engaged in the same general trade." It was there stated:

There being no other producer of rock phosphate in the French protectorate of Morocco than the Office Cherifien des Phosphates, then it would seem logically to follow that the allowance to be made for profit would be the profit ordinarily added by the Office Cherifien des Phosphates in selling its product. In 1927, according to collective Exhibit 10, the sales were 1,198,006 tons, of which 70,000 tons were sold outside of Europe, 14,608 tons in Morocco, and the remainder in Europe. We think it may therefore be properly stated that the sales to European countries should be taken as the measure of the "profit which is ordinarily added." We have heretofore stated that the net price f. o. b. Casablanca to such European countries during this period was approximately $6 per ton. Assuming the cost of production to be as claimed by appellant, the profit which should be added is the difference between said cost of production and said sum of $6. When such profit is added, the cost of production is such as to justify the antidumping finding here complained of.

Inasmuch as the court in the *Cottman* case, *supra*, was engaged in pointing out the quality and quantum of proof necessary to satisfy the relevant cost of production statute, it is indeed significant that it did not suggest as a pertinent factor the number of individual sales made by the producer of the involved merchandise.

In the recent case of *Marine Products Co.* v. *United States*, 39 C. C. P. A. (Customs) 52, C. A. D. 462, our appellate court affirmed the holding of the first division of this court (Reap. Dec. 7830, *supra*) to the effect that "determination of profit under statutory cost of production is based on the amount realized where the greater quantity of the product is sold."

It will be observed that in the instant case the price differential was occasioned not by the areas in which the product was sold but by reason of the category of the purchaser who bought. The principle that volume of business determines ordinary profit is, nevertheless, appropriately invoked here.

As an alternative contention, and one not raised before the trial court, counsel for appellant suggests that the profit actually made by the manufacturer in all of its sales is the profit ordinarily added; that, consequently, neither kind of sale made by the manufacturer may be disregarded, but an average of all sales should be taken to determine the percentage of his over-all profit, which in this case would amount to the invoice price, less 37⅗ per centum.

This theory, though advanced under somewhat different circumstances, in the case of *Marine Products Co.*, v. *United States*, *supra*, was specifically rejected when the court stated:

Of course if the issue here were merely computing the average profit that was made by the cannery on all of the product sold by it, a loss on one part of its sales would offset profits made on another.

It seems that the dissenting judge below reasons on that basis. Of course, giving consideration to the goods sold at a loss really does discount the actual

profit made by the cannery. That, however, is immaterial as far as this issue is concerned, which is, what is the ordinary profit made in the usual course of business, and as far as this court is concerned, the only evidence of profit which it appears that the exporter ordinarily added is found in sales for domestic consumption in Mexico other than the sales to the Pando company.

We are not permitted by the provisions of section 402 (f), *supra*, to estimate the profit to be added to make up cost of production, except to the extent that the profit is less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of said section. *United States* v. *Jovita Perez*, 36 C. C. P. A. (Customs) 114, C. A. D. 407. Striking an average between sales to wholesalers and sales to retailers would here produce a profit which was not only not "ordinarily" added, but one which was never added.

In view of the foregoing considerations, we adopt the findings of fact and conclusions of law made by the trial court and affirm its judgment sustaining the entered value of the instant merchandise.

Judgment will be entered accordingly.