(A.R.D. 111)

SCHWEPPES (U.S.A.), LTD. v. UNITED STATES

Entry No. 900226.

## Second Division, Appellate Term

(Decided September 8, 1959)

*Barnes, Richardson & Colburn* (*Hadley S. King* and *Norman Schwartz* of counsel), for the appellant.

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector*, trial attorneys), for the appellee.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: This is an application for review of a decision and judgment sustaining the appraised value of certain imported merchandise. The merchandise in question consists of a flavoring extract imported in steel drums. The drums, being separately classifiable for tariff purposes, were separately appraised, and their value is not in issue here.

With respect to the flavoring extract, the appraiser found a value of 303 shillings, 1.90 pence [1] per imperial gallon, based upon cost of production, as that value is defined in section 402(f) of the Tariff Act of 1930, as follows:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Appellant likewise contends for a cost-of-production value basis, claiming said value to be 42 shillings, 11.50 pence, per imperial gallon. The difference between the appraised value and the claimed value is occasioned primarily by the fact that, included within the former, as part of the cost of materials, is an excise tax paid by the British manufacturer to the British Government at the time of the purchase of

---

[1] All currency references herein are to British sterling.

ethyl alcohol used in the manufacture of the imported product. As will be seen, *infra*, this tax is remitted to the manufacturer upon exportation of the finished merchandise. Increases in the usual general expenses and profit ordinarily added resulting from the inclusion of the tax in the cost of materials further account for the differential between the appraised and claimed values.

The facts in issue were presented to the trial court in the form of an oral stipulation which recites the following:

(1) That on or about the date of exportation, such or similar flavoring extract was not freely offered for sale for home consumption in England or for export to the United States nor for sale in the principal market of the United States.

(2) That the time preceding the date of exportation ordinarily permitted for manufacture or production of such merchandise was about 18 months.

(3) That one of the ingredients used in the manufacture of this product is ethyl alcohol and that the only issue is whether an excise tax actually paid by the manufacturer to the British Government on ethyl alcohol used in making the imported merchandise is part of the cost of production.

(4) That the said excise tax amounted to 212 shillings, 4 pence, per proof gallon of ethyl alcohol and was refunded to the manufacturer on the exportation of the finished product to the United States.

(5) That the actual cost of manufacture per imperial gallon, exclusive of the said excise tax, was as follows:

Ingredients_____ 34 shillings
Labor _____ 1 shilling, 5 pence
General expenses_____ 3 shillings, 1 pence
Profit _____ 4 shillings
Packing stainless steel drums_____ 40 pounds each

(6) Appraisement was made at 303 shillings, 1.90 pence, per imperial gallon of extract, plus £40.0.0 for cost of drums, as follows:

The importation consisted of 1,248 imperial gallons, the equivalent of 1,291.68 proof gallons of alcohol.

| | |
|---|---|
| Total cost of ingredients and labor at 35 shillings, 5 pence, per imperial gallon for 1,248 imperial gallons_____ | =£2, 210. 0. 0. 00 |
| Plus 1,291.68 proof gallons of alcohol at 212 shillings, 4 pence, per proof gallon_____ | =£13, 713. 6. 8. 64 |
| Total cost for labor and material, including excise tax_____ | =£15, 923. 6. 8. 64 |
| Plus 10% for general expenses_____ | =£1, 592. 6. 8. 06 |
| TOTAL_____ | £17, 515. 13. 6. 70 |
| Plus 8% for profit_____ | £1, 401. 5. 0. 94 |
| TOTAL_____ | £18, 916. 18. 7. 64 |
| This is equal to (18,916×20, plus 18 shillings, plus 6.64 pence, divided by 1,248) per imperial gallon_____ | £0. 303. 1. 90 |
| Plus cost of packing, drums, at each_____ | £40. 0. 0 |

(7) That the orange and lemon flavoring manufactured by Schweppes, Limited, of England, for use in Great Britain was the same as the orange and lemon

flavoring manufactured by it for export to the United States, except that, in the product made for home consumption, the amount of alcohol used in said product consisted of approximately 70 percent ethyl alcohol and 30 percent isopropyl alcohol.

(8) That the alcohol used in manufacturing the product for export to the United States was *all* ethyl alcohol.

(9) That the portion of ethyl alcohol used in the product for home consumption was subject to the same rate of excise tax as the ethyl alcohol used in making the product for export to the United States.

(10) That the isopropyl alcohol was free of tax and that no isopropyl alcohol was used in the manufacture of the product for export to the United States.

It is clear from the foregoing that the issue as posed by the parties is whether or not the British excise tax on ethyl alcohol, paid upon the purchase of the alcohol, but refunded upon exportation of the flavoring extract, is an element to be considered in determining the cost of production of the merchandise at bar.

In a well-reasoned opinion, in which great reliance was placed upon the principles expressed in the cases of *Oxford University Press, N.Y., Inc., (M. Farris & Co., Inc.)* v. *United States,* 36 C.C.P.A. (Customs) 102, C.A.D. 405 and *Swizzels, Inc.* v. *United States,* 38 Cust. Ct. 644, Reap. Dec. 8794, the trial judge sustained the action of the appraiser in including the excise tax in the cost of materials. He therein stated:

In the case at bar, the exporter, at the time of manufacture and prior thereto, paid the excise tax on the ethyl alcohol actually used in the production of the imported merchandise. The said excise tax became, therefore, at that time and prior to exportation, bound up with the other costs of the ingredients to the manufacturer and so formed an integral part of the "cost of materials" in the production of the merchandise, which "cost of materials," therefore, included, at the time of production, the *per se* cost of the ingredients, plus the excise tax paid.

\*    \*    \*    \*    \*    \*    \*

\* \* \* The refunds of the excise tax herein, contingent upon the exportation of the merchandise, does not, in and of itself, reduce the cost of the materials which necessarily included the excise tax at or prior to the production of the merchandise. The imported product could not be manufactured without the ethyl alcohol, and all costs in its procurement, including the tax imposed, were part of the statutory cost of production of the imported merchandise.

Counsel for appellant point out that, as a result of the approach taken by the court below, a value approximately seven times the actual cost to the manufacturer has been found for the merchandise at bar, and, in the course of oral argument before us, it was suggested that "the importer has been asked to pay duty on practically nothing but British excise tax." It is contended that a result so inconsistent with commercial concepts of cost and value is completely unrealistic, and that a technical interpretation of the provisions of the cost of production statute which occasions such a variance is unjustifiable.

At the outset, we are constrained to observe that the Congress has, in section 402(f), *supra,* laid down a complete and inclusive formula

for determining cost of production, and, if a literal construction of its provisions tends to bring about inequities, it is not the function of this court to relieve against them. The remedy lies with the legislature. Indeed, a remedy has already been provided, for in the revision of the valuation sections of the Tariff Act of 1930, in the Customs Simplification Act of 1956 (not applicable to the importation at bar), such a tax as is here involved, to wit, "any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used," is expressly excluded from the determination of cost of materials for the purpose of finding "Constructed Value." (§ 402(d), Customs Simplification Act of 1956.)

Under the circumstances that the Customs Simplification Act of 1956 effects major revisions of the bases of value defined in section 402 of the Tariff Act of 1930, and substitutes "Constructed Value" for "Cost of Production," we are not persuaded to the view, urged by counsel for appellant, that the exclusion from cost of materials of internal taxes subsequently remitted, in the new law, represents a clarification of, rather than a change from, existing law. In any event, we are not here guided by the new provisions in our interpretation of section 402(f), *supra.*

A careful reading of subdivision (1) of said section 402(f) clearly reveals that the element of "cost of materials" is to be ascertained as of the time when such materials were or could have been purchased for the production of the particular merchandise under consideration. As stated in the case of *Charles Stockheimer, Inter-Maritime Forwarding Co., Inc.* v. *United States; United States* v. *Charles Stockheimer, Inter-Maritime Forwarding Co., Inc.,* 44 C.C.P.A. (Customs) 92, C.A.D. 642:

Section 402(f) provides for a cost of production based upon "The cost of materials * * * at a time * * * which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business." Obviously the quoted language refers to the *latest* time which would permit such production, since if the reference were to *any* time sufficiently early to permit production, it would be wholly indefinite. The section, therefore, fixes cost of materials with respect to a definite time, and without reference to who the purchaser may be or whether a purchase is actually made. [Italics quoted.]

There can be no question here but that when the ethyl alcohol used in the production of the flavoring extract at bar was purchased, the cost thereof included the British excise tax in the amount of 212 shillings per proof gallon. Since that is the time made relevant by the statute, it is immaterial that, upon a later date, the contingency of exportation having been met, the tax was refunded. We are not called upon to ascertain, and, therefore, may not properly consider,

what the manufacturer may regard as his ultimate or true costs. Neither may we inquire into the effects of any actions taken by the manufacturer to reduce his initial costs.

This is certainly the purport of *Oxford University Press, N.Y., Inc., (M. Farris & Co., Inc.)* v. *United States, supra,* wherein it was held that nonrecurring costs, such as those involved in composition, editorial services, corrections and proofreading, plates, translation, indexing, permission fees, and royalties, could not be spread over or charged to additional copies of the volume, the printing of which was only contemplated at the time of exportation of 5,000 copies of the book under appraisement, out of an original printing of 20,000 copies. All costs actually incurred prior to exportation were considered as part of the cost of materials, regardless of the fact that the publisher subsequently caused some 27,320 extra copies to be printed.

In respect to the pertinence of a particular date in relation to the cost or value of an ingredient in a manufactured article, we deem closely analogous the principles involved in determining the issue of component material of chief value of an article composed of two or more separate parts. It is settled law that component material of chief value is to be ascertained with reference to the costs of the individual elements at the time they are ready to be assembled. *United States* v. *Rice-Stix Dry Goods Co.,* 19 C.C.P.A. (Customs) 232, T.D. 45337.

In the case of *Adolph Goldmark & Sons Corp.* v. *United States,* 31 C.C.P.A. (Customs) 6, C.A.D. 241, the question of component material of chief value arose as an incident to the determination of whether an importation of marmalade was subject to the provisions of the Sugar Act of 1937, covering all articles in chief value of manufactured sugar. It there appeared that the marmalade was made in England from oranges and from sugar imported into England and assessed with an import duty. It was also established that, upon exportation of the marmalade, the manufacturer received a refund of 93 per centum of the duty paid when the sugar was imported. The record further disclosed that if the duty were taken into consideration in computing the cost of the sugar to the manufacturer the total would exceed the cost of the oranges, but if, by virtue of the subsequent refunds, the amount of duty were to be disregarded, the cost of the oranges would be higher than that of the sugar. In holding that, despite the drawback, sugar was the component material of chief value, the court stated:

At the time the sugar and oranges were combined to form the resultant product, the sugar was the component material of chief value. Any drawback or refund of duty which the manufacturer received upon exportation of the marmalade, therefore, cannot be considered in computing the component material of

chief value. The said refund, having become effective *after* the marmalade was manufactured, under the rule must be held not to affect the relative costs of the sugar and oranges in the product. [Italics quoted.]

Notwithstanding the fact that we are here called upon to construe the cost-of-production formula for the purposes of determining dutiable value, whereas the court, in the *Goldmark* case, *supra*, was determining the value of a component for purposes of classification, the narrow issue of the effect of a refund of a tax or duty, subsequent to the time when the cost of a material subject to the tax or duty is to be ascertained, is precisely the same in both instances. We are of opinion that the rule of the *Goldmark* case requires us to conclude that the British excise tax on ethyl alcohol was properly considered by both the appraiser and the trial court as a part of the "cost of materials," within the contemplation of section 402(f)(1), *supra.*

This was likewise the conclusion reached by the court in the case of *Swizzels, Inc.* v. *United States, supra*, on a very similar state of facts.

By reason of the foregoing, we affirm the judgment of the court below, and incorporate herein, by reference, the findings of fact and conclusions of law set forth in its decision.

Judgment will be rendered accordingly.

(A.R.D. 112)