(Reap. Dec. 10947)

GEHRIG HOBAN & CO., INC. v. UNITED STATES

Entry No. 778538.

(Decided April 13, 1965)

*Barnes, Richardson & Colburn* (*Hadley S. King* and *Norman C. Schwartz* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

WILSON, Judge: This is an appeal for reappraisement of the value of certain merchandise, consisting of "Canoe Cologne No. 226," exported from France on or about September 5, 1959. The question here involved concerns the proper cost of production of the merchandise in question.

The merchandise was entered after the effective date of the Customs Simplification Act of 1956, T.D. 54165, and is identified on the final list, published by the Secretary of the Treasury pursuant thereto, T.D. 54521, as "Perfumery, including cologne and toilet waters, containing alcohol." Appraisement of the merchandise was made under cost of production, section 402a(f) of the Tariff Act of 1930, as amended.

The parties to this controversy have agreed that cost of production, section 402a(f), *supra*, is the proper basis of appraisement.

The sole issue is whether the cost of the materials and fabrication of such identical merchandise sold in the home market in France or the cost of materials and fabrication of identical merchandise manufactured for sale in the United States represents the correct cost of materials and fabrication to be considered in arriving at the proper cost of production of such merchandise.

The plaintiff alleges that the materials used to manufacture "Canoe Cologne No. 226" contained alcohol, which was subject to an excise tax, if the resultant perfume or cologne was sold in France for home consumption, and, further, that upon exporation of such perfume or cologne to the United States for consumption, the alcohol contained therein was not subject to such excise tax (plaintiff's exhibit 1, page 2).

The parties herein have agreed that the usual general expenses, as defined in section 402a(f)(2) of the tariff act, as amended, are equal to 103 per centum of the cost of material and labor; further, that the profit, as defined in section 402a(f)(4), is equal to 15 per centum of the sum of labor, materials, and the usual general expenses; and that the cost of packing is French francs 14 per bottle. The parties have further agreed that the cost of labor and materials when manufacturing Canoe Cologne No. 226 for export to the United States is francs 319.07 per bottle; that the cost of labor and materials when producing such cologne for sale in the French market is 656.64. The difference in cost of materials and fabrication, together with other data, is given in the affidavit of Jacques Paligot (plaintiff's exhibit 1), general secretary of the exporter, Parfums Dana, S.A.R.L. as follows:

In our cost of production figures for France and the United States, it will be noted that the cost of material for the French market is considerably more than it is when manufacturing for export to the United States. This difference is accounted for by the fact that alcohol which is used in these products in the manufacture for the French market is subject to a French excise tax whereas the same alcohol when used in the manufacture of the products for export is not subject to such tax. For example, the cost of alcohol in this period to be

used for manufacture of products to be sold on the French market was 536 Fr (or 5.36 new Fr.) per liter 100° proof whereas the cost of the same alcohol to be used in the manufacture of products for export was 96 Fr (or 0.96 new Fr.) per liter 100° proof.

The labor factor is also lower when manufacturing for the United States. Our labor factor for this period when manufacturing for sale in France was greater than when manufacturing for export to the United States. This difference is accounted for by the fact that we sell a limited number of items to the United States which are prepared and shipped in large quantities and such manufacture and preparation for shipment when going to the United States is on an assembly line basis, whereas the same items when manufactured and prepared for shipment on the French market are in smaller quantities and such operation is practically a hand operation.

We have no separate cost of packing for the French market and most of our merchandise is delivered to the Paris area and substantial packing is not necessary. It is only when small quantities are shipped to the French Provinces that any substantial packaging is necessary. For this reason we include our domestic packaging, such as it is, in our general overhead. On the other hand, when exporting to the United States, a more substantial form of packaging is required and we have set forth separately the cost of such packaging.

\* \* \* \* \* \* \*

The statute under consideration reads as follows:
Section 402a (f), Tariff Act of 1930, as amended:

COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Plaintiff further introduced in evidence a supplementary affidavit of Mr. Paligot (plaintiff's exhibit 2), which reads as follows:

I, Jacques PALIGOT, being duly sworn, depose and say as follows:

1.—That I am the same Jacques Paligot who executed an affidavit before the United States Consul at Paris, France, under date of October 31, 1962, pertaining to the cost of production of CANOE COLOGNE and BON VOYAGE PERFUME,

2.—Reference is made to the statement appearing at page 2 of my said affidavit of October 31, 1962:

> In our cost of production figures for France and the United States, it will be noted that the cost of material for the French market is considerably more than it is when manufacturing for export to the United States. This difference is accounted for by the fact that alcohol which is used in these products in the manufacture for the French market is subject to a French excise tax whereas the same alcohol when used in the manufacture of the products for export is not subject to such tax. For example, the cost of alcohol in this period to be used for manufacture of products to be sold on the French market was 536 Fr. (or 5.36 new Fr.) per liter 100 proof whereas the cost of the same alcohol to be used in the manufacture of products for export was 96 Fr. (or 0.96 new Fr.) per liter 100 proof.

Reference is also made to the figures previously furnished in my said affidavit of October 31, 1962, under the headings "COST OF PRODUCTION FOR SALE FOR EXPORT TO THE UNITED STATES: MATERIALS AND FABRICATION." Such figures were the actual figures for the production of merchandise for export to the United States, as such figures are reflected in our regular books of account. That is to say, the figures stated included the actual cost of raw materials per unit, plus all direct costs per unit of labor, fabrication, manipulation, etc., computed as of that time prior to exportation which would ordinarily permit the manufacture of said merchandise, based upon our normal production time as of 1959 of 45 days for any particular lot of perfume and 30 days for any particular lot of cologne. Our costs for labor and materials did not change during the year 1959.

3.—That the alcohol utilized in the production of merchandise exported to the United States by us from January 1, 1958 to date, was purchased under our "Export Account" with the French authorities, under which we pay only the export-price either by net cash within 10 days of billing or on 90-day terms at a premium of 8%. When manufacturing perfumes for consumption in France we purchased alcohol bearing a tax for which in 1959 we were required to pay 5.36 new Fr. per liter. On the other hand when manufacturing perfume for export we were permitted to purchase alcohol under our "Export Account" at a price which did not include the tax and in 1959 we actually paid for alcohol used in the manufacture of perfume for export to the United States 0.96 new Fr. per liter.

4.—We have never operated under any system of alcohol purchases at the home consumption price coupled with a rebate or refund upon exportation of the finished product.

In support of the claimed statutory cost of production of the merchandise in question, plaintiff contends that the actual costs entering into the imported product must ordinarily be taken in preference to costs entering into the same product when produced for sale elsewhere than the United States. In this connection, plaintiff, in its brief, directs attention to the holding of the court in *Charles Stockheimer et al.* v. *United States*, 44 CCPA 92, C.A.D. 642. That case involved a situation wherein certain materials had to be ordered from 6 to 12 months in advance in a fluctuating market. In discussing the proper cost of production of the involved merchandise, the court therein, page 94, stated:

No doubt if the producer had actually made a purchase of materials at the time specified by the section, the price paid for it would fix the statutory cost of materials. * * *

and, at page 96:

As we view section 402(f) it is designed to approximate as closely as is feasible the actual cost of producing the merchandise if it were manufactured as expeditiously as could be done in a normal manner for delivery on the date of export. * * *

There is no question here as to a fluctuating market but the question is presented as to whether or not the cost of production of the involved merchandise included the French tax.

In the case at bar, it appears from the affidavit of Mr. Paligot that the merchandise sold in the home market and that sold for export to the United States is identical. The affiant, in plaintiff's exhibit 1, states that an excise tax is paid on the alcohol used in the manufacture of the perfumes sold in France, whereas the alcohol used in the identical perfumes to be exported to the United States was not subject to the tax. This statement, in my opinion, is a mere conclusion of the affiant, unsupported by any evidentiary facts in the record. The plaintiff, in alleging that two identical articles, made of the identical materials, should have different costs, must establish for the imported merchandise the claimed value by substantial evidence, which it has failed to do. No proof of the claimed applicable French law or its operation has been here shown to establish whether the cost of materials herein excludes the amount of the excise tax from the cost of the alcohol. If the statements of the affiant relative to the French law are to be credited as facts, then the operation of that law gives no guaranty that the particular merchandise here involved did not pay the excise tax, as no method of checking the use of taxable and tax-free alcohol is provided. The mere statement of the affiant that the alcohol in the product here imported did not pay or was not subject to the excise tax is not proof that the excise tax was not paid on the particular importation.

Even conceding that alcohol intended to be used in the manufacture of perfumes which are to be exported from France was not subject to excise tax, there is nothing in this record to show that the particular alcohol used in this case was not such alcohol as was originally intended for the home market. The mere statement by the manufacturer that certain alcohol exported to the United States was purchased under its "Export Account" with the French authorities, is insufficient in law, in my opinion, to establish that the alcohol contained in the importation at bar was such alcohol as was not subject to excise tax.

In the case at bar, there is no competent evidence that alcohol in whatever form, or for whatever use it is intended, is not subject to such

excise tax in the first instance, nor is there any evidence that such excise tax was refunded after proof of exportation of such alcohol. In *Schweppes* (*U.S.A.*), *Ltd.* v. *United States*, 43 Cust. Ct. 608, A.R.D. 111, an excise tax was imposed on ethyl alcohol at a time preceding the manufacture of the imported merchandise, which alcohol was an ingredient in the manufacture of the imported product. The court held that a refund of said excise tax received by the English manufacturer upon exportation of the finished product could not be deducted from the cost of materials thereof, in determining statutory cost of production. See also *Swizzels, Inc.* v. *United States*, 38 Cust. Ct. 644, Reap. Dec. 8794.

Section 402a(f)(1), *supra*, does not restrict the consideration of the cost of materials and fabrication to the particular merchandise under question, but includes all such or similar merchandise. Said provision includes the same merchandise, conceded to be made of the same materials, and which is identical with the merchandise here involved, except that it is subject to an excise tax under the French law. The cost of the alcohol plus the excise tax is part of the statutory cost of materials of the imported product. This is so, in my opinion, even if the excise tax applied only to sales in the home market, because it is an essential element in determining cost of production, regardless of the ultimate destination of the finished product.

The Government, in this case, does not have the burden of establishing that the excise tax on the alcohol contained in this importation was not paid. That burden remains with the plaintiff and, in my opinion, has not been met, the presumption of correctness attaching to the appraiser's finding of value not having been overcome. *Kobe Import Co.* v. *United States*, 43 CCPA 136, C.A.D. 620; *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495.

On the agreed record here presented, I find as facts:

1. That the involved merchandise consists of "Canoe Cologne No. 226," exported from France on September 5, 1959.

2. That said merchandise is identified on the final list, published pursuant to the order of the Secretary of the Treasury (T.D. 54521), and is, accordingly, subject to appraisement under section 402 of the Tariff Act of 1930, as amended.

3. That, on or about the date of exportation, such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, either for home consumption or for exportation to the United States; that, on or about the date of exportation, such or similar previously imported merchandise was not freely offered for sale in the principal markets of the United States, to all purchasers for domestic consumption, in the usual wholesale quantities and in the ordinary course of trade.

4. That the various costs of producing "Canoe Cologne No. 226" per bottle of 100 liters are as follows:

| | | |
|---|---:|---|
| Material and labor | 656. 64 | French francs |
| Usual general expenses (103% of cost of materials and labor) | 675. 34 | " " |
| Total cost of materials, labor and general expenses | 1, 331. 98 | French francs |
| Profit (15% of cost of materials, labor and general expenses) | 199. 80 | " " |
| Packing | 14. 00 | " " |
| TOTAL | 1, 545. 78 | French francs |

I conclude as matters of law:

1. That there was no foreign value, export value, or United States value for the imported merchandise, as such values are defined in section 402a of the Tariff Act of 1930, as amended.

2. That cost of production, as that value is defined in section 402a(f) of the Tariff Act of 1930, as amended, is the proper basis for the determination of the value of the merchandise here involved.

3. That said cost of production is as set forth above in finding of fact No. 4.

Judgment will be rendered accordingly.