(A.R.D. 218)

Stockheimer & Harder
American Foreign Industries, Inc. } *v.* United States

Entry Nos. 894382–1/2 ; 716135.

## Second Division, Appellate Term

(Decided February 6, 1967)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) ; *Barnes, Richardson & Colburn,* associate counsel ; for the appellants.

*Barefoot Sanders,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the appellee.

Rao, Chief Judge: This is an application for review of a decision and judgment in a reappraisement action. The case was originally decided as *Stockheimer & Harder* and *American Foreign Industries, Inc.* v. *United States*, 49 Cust. Ct. 420, Reap. Dec. 10355, wherein it was held that cost of production, as defined in section 402(f) of the Tariff Act of 1930, was the proper basis for determining the value of the merchandise in issue which consisted of fishhooks, imported from France, and that such values were the claimed values as specifically computed in the findings of fact.

Thereafter, counsel for the Government moved for a rehearing on the ground that all of the details of appraisement of all the merchandise covered by these appeals had not been presented to the court since, subsequent to the trial, it had been ascertained that certain of the merchandise had been appraised on the basis of foriegn value within section 402(c) of said act, as amended, which fact had not been brought to light during the trial.

Upon the rehearing, the parties agreed to limit the appeals for reappraisement to those fishhooks which had been appraised on the basis of cost of production, to wit, invoice item number 9617 N-Hamecon Triple, No. 6 and No. 4 in reappraisement appeal 271009–A, and item 206 T14 Spl Aberdeen, No. 1, No. 2, No. 1/0, and No. 2/0 in reappraisement appeal 269272–A. It was further agreed that item number 9617 R which was appraised on the basis of foreign value was no longer involved in these appeals. The case was resubmitted for decision upon the following stipulation entered into during the course of trial.

IT IS HEREBY STIPULATED AND AGREED by and between the parties hereto, subject to the approval of the Court, as follows:

1. That this stipulation is limited to those items appraised on the basis of cost of production, Section 402(f) of the Tariff Act of 1930 as it existed prior to the Customs Simplification Act of 1956, at the invoice value plus 9.60 per centum, net packed.

2. That the said 9.60 per centum addition represents a rebate of French Social Security and similar taxes, received by the manufacturer after the merchandise had been exported to the United States.

3. That the said 9.60 per centum addition was included in the appraised cost of production of the involved merchandise as a usual general expense, Section 402(f)(2), Tariff Act of 1930.

4. That if the said 9.60 per centum addition properly forms no part of said usual general expenses, the correct cost of production of the involved merchandise is as found by the court in its decision heretofore rendered herein on October 25, 1962 (R.D. 10355); that if the said 9.60 per centum addition properly forms part of said usual

general expenses, the appraised values herein represent the proper cost of production.

Predicated upon the foregoing, a judgment was rendered sustaining the use of cost of production as the proper basis for the determination of the value of the involved merchandise but holding that such values were the appraised values. *Stockheimer & Harder* and *American Foreign Industries, Inc.* v. *United States*, 55 Cust. Ct. 532, Reap. Dec. 11034. This application is for a review of that decision.

The sole issue involved in the rehearing of this case, and, hence, the sole issue now before us on review, was whether 9.60 per centum of the invoiced value of these fishhooks was properly included as part of the appraised value. The said 9.60 per centum represents a certain French social security tax and similar taxes imposed against the imported merchandise by the French Government and refunded to the exporter subsequent to the exportation of the goods to the United States. Plaintiff below contended that this 9.60 per centum formed no part of the usual general expenses and should not have been included in the cost of production.

In concluding that the 9.60 per centum tax was properly considered by the appraiser to be an element in statutory cost of production, the trial judge relied heavily on the case of *Schweppes (U.S.A.) Ltd.* v. *United States*, 43 Cust. Ct. 608, A.R.D. 111. It also considered as relevant the cases of *Swizzels, Inc.* v. *United States*, 38 Cust. Ct. 644, Reap. Dec. 8794, and *Adolph Goldmark & Sons Corp.* v. *United States*, 31 CCPA 6, C.A.D. 241. The court further regarded as significant the absence of proof as to the manner in which such tax was levied or the way in which the exporting company carried such tax upon its books.

For the reasons hereinafter appearing, we are constrained to disagree with the result reached by the trial court.

Cost of production as a basis for the determination of the value of imported merchandise is defined in section 402(f) of the Tariff Act of 1930, as follows:

Section 402(f), Tariff Act of 1930:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

> (1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

> (2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The *Schweppes* case, *supra*, was concerned with a British excise tax on ethyl alcohol used in the manufacture of a flavoring extract, which tax was refunded upon exportation of the extract. The tax was held to be a part of the cost of materials used in the manufacture of the extract, for the reason that, at the time of purchase of the alcohol, the tax was an element of its cost. In so concluding this court stated:

A careful reading of subdivision (1) of said section 402(f) clearly reveals that the element of "cost of materials" is to be ascertained as of the time when such materials were or could have been purchased for the production of the particular merchandise under consideration.

\*        \*        \*        \*        \*        \*        \*

There can be no question here but that when the ethyl alcohol used in the production of the flavoring extract at bar was purchased, the cost thereof included the British excise tax in the amount of 212 shillings per proof gallon. Since that is the time made relevant by the statute, it is immaterial that, upon a later date, the tax was refunded.

It would appear from the foregoing, and from our analysis of the rationale of the decision, that the rule of the *Schweppes* case rested on the specific language of subdivision (1) of said section 402(f), calling, as it did, for the determination of cost of materials at a specific time "preceding" the date of exportation. This limiting language prompted a similar decision in *Swizzels, Inc.* v. *United States, supra,* and, in the area of chief value, a similar consideration led to the conclusion in *Adolph Goldmark & Sons Corp.* v. *United States, supra,* that an import tax on a sugar component was an element of the value of certain marmalade even though drawback was allowed upon exportation of the product.

We are of the opinion, however, that the distinction in statutory language between the provision for cost of materials and the provision for usual general expenses is of crucial importance to this case. As pointed out in the *Schweppes* case, only the cost of materials is subjected to a special time limitation, namely, that it must be ascertained at a prescribed time *preceding* the date of exportation. In the

instant case, the parties have stipulated that the inclusion of the French social security tax in cost of production is proper only if the tax falls within the general expenses covered by subdivision (2). This removes the case from the limiting language of subdivision (1) and requires the court to determine whether the absence thereof from subdivision (2) of said section 402(f) is significant.

Seemingly, the case of *United States* v. *Alfred Dunhill of London, Inc.*, 32 CCPA 187, C.A.D. 305, cited by both parties, to the extent that it is applicable, supports the conclusion that a tax which is refunded is not a general expense. In that case, a tax levied on the sale of goods to unregistered English buyers for home consumption was held to have been improperly included in the cost-of-production value of exported goods, since the goods in question were never subjected to said tax. The court reasoned that the tax, which was borne only when goods were sold in England to so-called unregistered buyers, did not constitute a "usual general expense" of the cost of production of the goods sold outside of England. With regard to the exported goods, said tax, according to the court, was not an expense of doing business and not a part of the expense on which the manufacturer's profit was calculated; therefore, it was not a "usual general expense."

Although the facts of the *Dunhill* case are inapposite, its discussion of general expenses is clearly relevant. In that case, the ruling derived from the fact that a tax which was never paid by the manufacturer never became a part of the usual general expenses. By the same reasoning, a tax which, though paid, is actually refunded, is no more an expense of doing business than one which was never paid in the first instance. In neither event is it an expense sustained by the manufacturer in manufacturing or producing such or similar merchandise.

The stipulation between the parties establishes that the instant tax was returned to the manufacturer after the merchandise had been exported to the United States, so that, for all intents and purposes, it is as if the tax was never paid. A rebated tax, such as this one, was, nevertheless, considered to be an element of cost of production in the *Schweppes* and *Swizzels* cases only because the statutory requirement was that the cost of production be determined at a prescribed time preceding the date of manufacture. At that instant in time, the tax had in fact been paid and its rebate remained dependent upon the contingency of exportation.

In calculating the general expenses of producing a given commodity, in the absence of a statutory requirement *contra*, a tax which will be refunded is not an expense of doing business. Accordingly, in view of the stipulated fact that the tax or taxes here in issue constitute an element of the cost of production of the instant merchandise only if they are includible in general expenses, we are of the opinion that said

taxes were improperly held to be a component of the cost of production of the subject fishhooks.

This court, therefore, makes the following findings of fact:

1. That the merchandise involved herein consists of fishhooks, exported from France in March and July of 1955 and appraised on the basis of cost of production, as that value is defined in section 402(f), *supra.*

2. That the appeals for reappraisement have been limited to item 9617 N–Hamecon Triple, No. 6 and No. 4, in reappraisement appeal 271009–A and item 206 T14 SPL Aberdeen, No. 1, No. 2, No. 1/0, and No. 2/0 in reappraisement appeal 269272–A.

3. That appeal 271009–A does not apply to item 9617 R which was appraised on the basis of foreign value.

4. That, on or about the dates of exportation of the merchandise identified in finding of fact No. 2, such or similar merchandise was not freely offered for sale to all purchasers in the country of exportation either for home consumption or for exportation to the United States.

5. That, on or about said dates of exportation, such or similar imported merchandise was not freely offered for sale to all purchasers in the United States.

6. That, in computing cost of production as that value is defined in section 402(f) of the Tariff Act of 1930, the appraiser included in his finding of usual general expenses, as required by subdivision (2) of said provision, an item of 9.60 per centum of the invoice unit values, which item represented an amount equivalent to a French social security tax and similar taxes.

7. That said social security and similar taxes in the sum of 9.60 per centum of the invoice unit values were rebated after the merchandise was exported to the United States.

8. That the other elements entering into the cost of production of the merchandise at bar, and the totals thereof, are as follows:

### Invoice Description

9617 N–Hamecon triple, a anneau fil moyen-nickele, No. 6:

French francs per 1,000

| | |
|---|---:|
| Raw materials | 182. 70 |
| Fabrication | 1, 651. 06 |
| General expenses | 356. 81 |
| Addition for profit | 222. 75 |
| Containers, coverings, and costs, charges, and expenses incident to placing merchandise in condition, packed ready for shipment to the United States | 36. 68 |
| Total | 2, 450. 00 |

Invoice Description

9617 N–Hamecon triple, a anneau fil moyen-nickele, No. 4:

French francs per 1,000

| | |
|---|---|
| Raw materials | 240. 80 |
| Fabrication | 1, 638. 72 |
| General expenses | 304. 12 |
| Addition for profit | 228. 77 |
| Containers, coverings, and costs, charges, and expenses incident to placing merchandise in condition, packed ready for shipment to the United States | 37. 52 |
| TOTAL | 2, 449.93 |

Invoice Description

206 T14–Spl. Aberdeen fil rond, tige pliee a angle droit etame, No. 1:

French francs per 1,000

| | |
|---|---|
| Raw materials | 42. 62 |
| Fabrication | 358. 91 |
| General expenses | 46. 98 |
| Addition for profit | 38. 55 |
| Containers, coverings, and costs, charges, and expenses incident to placing merchandise in condition, packed ready for shipment to the United States | 9. 94 |
| TOTAL | 497. 00 |

Invoice Description

206 T14–Spl. Aberdeen fil rond, tige pliee a angle droit etame, No. 2:

French francs per 1,000

| | |
|---|---|
| Raw materials | 34. 72 |
| Fabrication | 358. 91 |
| General expenses | 46. 10 |
| Addition for profit | 49. 40 |
| Containers, coverings, and costs, charges, and expenses incident to placing merchandise in condition, packed ready for shipment to the United States | 7. 87 |
| TOTAL | 497. 00 |

Invoice Description

206 T14–Spl. Aberdeen fil rond tige pliee a angle droit etame, No. 1/0:

French francs per 1,000

| | |
|---|---|
| Raw materials | 47. 39 |
| Fabrication | 358. 91 |
| General expenses | 73. 64 |
| Addition for profit | 50. 93 |
| Containers, coverings, and costs, charges, and expenses incident to placing merchandise in condition, packed ready for shipment to the United States | 8. 13 |
| TOTAL | 539. 00 |

Invoice Description

206 T14–Spl. Aberdeen fil rond tige pliee a angle droit etame, No. 2/0:

French francs per 1,000

| | |
|---|---|
| Raw materials | 51. 52 |
| Fabrication | 358. 91 |
| General expenses | 135. 43 |
| Addition for profit | 51. 43 |
| Containers, coverings, and costs, charges, and expenses incident to placing merchandise in condition, packed ready for shipment to the United States | 8. 31 |
| TOTAL | 605. 60 |

9. That the record is devoid of proof with respect to any items other than hereinabove specified.

We conclude as matters of law:

1. That a French social security tax and other taxes of 9.60 per centum of the invoice unit values in the aggregate, which were rebated to the manufacturer after exportation of the merchandise, do not constitute a usual general expense under section 402(f)(2) of the Tariff Act of 1930.

2. That cost of production, as defined in section 402(f) of the Tariff Act of 1930, is the proper basis for the determination of the value of the merchandise described in finding of fact No. 8, *supra*, and that such cost of production as to each item was the figure opposite the word "TOTAL" in each instance in such finding; and

3. That as to all merchandise covered by the invoices in the appeals for reappraisement here involved, other than the articles listed in finding of fact No. 2, the cost of production is the value found by the appraiser.

4. That the decision and judgment of the trial court in Reap. Dec. 11034 should be reversed.