C. J. TOWER & SONS OF
BUFFALO, INC.

v.

UNITED STATES.

R.D. 11630; Reappraisement R66/21972.

United States Customs Court.

Feb. 19, 1969.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz, New York City, of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Harold L. Grossman, New York City, Trial Atty.), for defendant.

RICHARDSON, Judge :

The merchandise of this reappraisement appeal consists of 42, 1964 model Studebaker automobiles and 6, 1965 model Studebaker automobiles which were manufactured in and exported from Canada in June and November of 1964, respectively, by Studebaker of Canada, Ltd., and entered at Buffalo, N. Y., by the plaintiff-importer on behalf of the consignee Studebaker Automotive Sales Corp. of South Bend, Indiana. Both the exporter and the consignee are wholly owned subsidiaries of Studebaker Corp. of South Bend, Indiana. The imported cars, said to be identical in name, model number and construction to and interchangeable with, Studebaker cars manufactured for home consumption in Canada, were appraised on the basis of cost of production as defined in 19 U.S.C.A., section 1402(f) (section 402a(f), Tariff Act of 1930, as renumbered by the Customs Simplification Act of 1956).

No question arises here as to the basis of valuation or as to the accuracy of facts and figures entering into the appraisement of the involved automobiles. The importer attacks the sources of the figures used by the appraiser to ascertain cost of production of the basic cars as well as of optional equipment installed at the factory.

As to the basic cars, the record before the court shows that the appraiser arrived at cost of production by calculating pursuant to paragraph (1) of section 1402(f) labor, material, manufacturing overhead, tooling, and engineering covering the manufacturer's U. S. export operations, by calculating pursuant to paragraph (2) of section 1402(f) general expenses, inclusive of warranty, selling, advertising, and administration expenses covering the manufacturer's home market operations, and by calculating pursuant to paragraph (4) of section 1402(f) the actual profit covering the manufacturer's home market operations except where such profit was less than the statutory minimum, in which event the statutory minimum profit was used. Nothing was added in accordance with paragraph (3) of the statute as there was said to have been no packing. And as for the 1965 cars calculations made pursuant to paragraph (1) were based on labor and material figures covering the manufacturer's U. S. export operations for the period from October 1, 1964, through December 31, 1964.

As to optional equipment, the record shows that cost of production was arrived at on the basis of the manufacturer's selling prices to Canadian franchise dealers if such prices reflected all costs including the statutory minimum profit. Where such prices did not reflect such profit, then the statutory minimum profit was used.

The record herein also shows that the calculations of the appraiser as to both the basic cars and optional equipment were based upon an allowance for production lead time.

With respect to the basic cars, the importer contends that cost of production should be ascertained on the basis of the manufacturer's U. S. export costs and selling prices, and not on the basis of its

home market costs and selling prices. And with respect to optional equipment, the importer contends that cost of production is represented by the material costs, as all other costs were absorbed in the manufacturer's cost accounting for the basic cars here involved.

Upon the trial the Government presented evidence in the form of documentation disclosing details of the appraisements outlined hereinbefore (defendant's exhibits A and B). And the importer adduced testimonial and documentary evidence, including the official papers, with a view toward showing (a) that the warranty, selling expenses and advertising expenses relating to the involved cars were absorbed entirely by the consignee and constituted no part of the exporter's general expenses, (b) that labor costs, general expenses and profit markup in the selling prices of the subject cars are inclusive of factory installed optional equipment on such cars, (c) what the material costs of the optional equipment installed on the involved cars were, and (d) that the profit markup of other Canadian automobile manufacturers was unavailable to the exporter or to the consignee.

As the court views the instant case the primary issue here is one of law as to whether home or U. S. export market costs should have been utilized in ascertaining the cost of production value of the involved automobiles where such automobiles are the same in either market. In this connection it appears that the contentions of the importer as well as the bases for the appraisements here involved proceeded upon each party's interpretation of the meaning and scope of the words "such * * * merchandise" appearing in section 1402(f). The text of section 1402(f) reads:

## Cost of Production

(f) For the purpose of this subtitle *the cost of production of imported merchandise shall be* the sum of—

(1) *The cost of* materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing *such* or similar *merchandise,* at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of *such* or similar *merchandise;*

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind. [Emphasis added.]

The words "such * * * merchandise" appears only in the first and second paragraphs of section 1402(f). The appraiser seems to have interpreted these words to relate to merchandise identical to and other than the involved imported merchandise, as he allowed sufficient production lead time in calculating cost of production so that the sources of his calculations are cars and optional equipment manufactured anywhere from one to three months prior to the production of the involved merchandise. On the other hand the importer appears to have interpreted the same words to relate to the involved merchandise, as all of its evidence on cost of production is related only to cars and optional equipment covered by the subject appeals.

In Gehrig, Hoban & Co., Inc. v. United States, 57 Cust.Ct. 727, A.R.D. 210, cited to the court by plaintiff, among other cases, the Second Division Appellate Term of this court was confronted with the necessity of finding cost of production of imported cologne which was identical to that manufactured for the home market. The court in that case said (page 731):

> While Canoe 226 for domestic consumption and for export to the United States is identical, the only difference being in the cost of the materials and labor, there is, nevertheless, a sufficient distinction which would permit our consideration of the lower priced materials and labor charges as being the figure to be applicable to the merchandise at bar. We are of the opinion that section 402a(f) is concerned with merchandise for export to the United States and not for home consumption. Hence, the higher costs for materials and labor for the domestic product under the circumstances involved herein are not those costs which would ordinarily be considered in the manufacture of articles for export to the United States.

And on the basis of this reasoning the appellate term modified a finding and holding of the single judge which adopted the higher costs for materials and labor for the domestic market. It is questionable whether the court in A.R.D. 210, in view of qualifying language it used in the decision appropriate to the case at hand, was attempting to make a general rule for application to all cases.

Cited in the *Gehrig, Hoban* case is the case of Charles Stockheimer, Inter-Maritime Forwarding Co., Inc. v. United States, 44 CCPA 92, C.A.D. 642, involving the statutory cost of production of cashmere yarn used in the manufacture of the imported cashmere sweaters there involved. The importer contended that the proper basis for establishing cost of the yarn was the actual price paid for the yarn computed on a weighted average, while the Government claimed it to be the market price for future delivery of the yarn at the time of commencement of manufacture of the sweaters, as determined in the appraisement. The Court of Customs and Patent Appeals held that cost of such materials should be computed on the basis of the price which a purchaser of such yarn would have had to pay had he made a purchase at the specified statutory time. The opinion of the Court of Customs and Patent Appeals in the *Stockheimer* case seems to indicate that there is nothing so sacrosanct about the nature of the particular merchandise undergoing appraisement that all other merchandise is excluded from the ambit of the language "such * * * merchandise" in arriving at cost under paragraph (1). Said the court in *Stockheimer* (page 94):

> * * * The section [section 1402 (f) (1)], therefore, fixes cost of materials with respect to a definite time, and without reference to who the purchaser may be or whether a purchase is actually made.

And the appeals court further said (page 95):

> With respect to the contention of the amicus curiae that the cost under section 402(f) should be based on the actual price of the specific materials used in the imported merchandise, it may be noted that such an interpretation would render the statement in that section relative to time, and the reference to "similar merchandise," wholly superfluous. * * *

It is quite true that the words "such * * * merchandise" has been construed by the Customs Court to relate to the imported merchandise, as the facts in a number of cases cited by the importer demonstrate. But the court is also mindful of the fact that these words have not always been so restricted in meaning. In one case which arose contemporaneously with the *Stockheimer* case the importer entered its wool knit outerwear under cost of production value predicated upon the material costs of the yarn contained in the imported merchandise, filed a test case on appeal following the decision of the appraiser to base

material costs upon higher "open market costs", and then, in effect, capitulated in favor of final appraisement on the basis of the appraised yarn costs with the advent of the decision in the *Stockheimer* case. See Gehrig, Hoban & Co., Inc. v. United States, 50 Cust.Ct. 125, C.D. 2399.

It is to be noted that the statement in paragraph (1) relative to time modifies both the word "such" and the word "similar". Consequently, if the intent of Congress was to confine the meaning of the word "such" in paragraph (1) so as to have reference only to the imported merchandise, Congress might easily have achieved this object by having the paragraph read:

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing *such merchandise*, or similar merchandise, at a time preceding the date of exportation of *such merchandise* which would ordinarily permit the manufacture of *such merchandise* in the usual course of business;

But as the language of paragraph (1) now reads the court cannot ignore the time-sequence phrase of the paragraph in interpreting the true meaning and scope of paragraph (1). As the Court of Customs and Patent Appeals said of such phrase in *Stockheimer* (44 CCPA page 95):

* * * It is not reasonable to suppose that Congress would have employed the elaborate language of section 402(f) with respect to time if the intended meaning were merely that the actual cost of materials should be employed. * * *

Also, lexicographical usage of the word "such" indicates that the word is essentially a term of comparison. Funk & Wagnalls Standard Dictionary (1894 edition) defines the word "such" as:

*such* a. 1. Of that kind; of the same or like kind; identical with or similar to something specified or implied.

And Webster's New International Dictionary (1930 edition) defines the word "such" as:

*such* a. 1. Of that kind; of the like kind; like; similar; as, we never saw *such* a day;

 It, therefore, follows from the foregoing that the court must disagree with the argument advanced by plaintiff that as to the elements of selling, advertising, warranty, and administration expenses, that only those expenses which enter into the cost of manufacturing the *involved cars* are properly included in the cost of production valuation thereof. For the reasons stated the court agrees with the position taken by Government counsel in the brief on page 24 (taken with respect to paragraph (2) costs) that the home market merchandise, being identical to that exported to the states, comes within the ambit of the statutory term "such * ˙ * * merchandise". The court is of the opinion that as used in paragraphs (1) and (2) of section 1402 (f) the words "such * * * merchandise" mean either the imported merchandise or merchandise identical to or like the imported merchandise.

Having arrived at a conclusion respecting the breadth of scope of the term "such * * * merchandise" which would allow inclusion of merchandise other than the imported merchandise in the ascertainment of statutory manufacturing costs and general expenses costs, the next question to be considered is whether, on the evidence at bar, the appraiser was justified in calculating such and other statutory elements of costs upon the basis of home market merchandise rather than upon the basis of the imported merchandise. In this connection the examiner whose findings were adopted by the appraiser states (exhibit B, page 10):

This office does not consider U.S.A. export transactions as being actual sales, but merely billing prices, in the determination of profit in applying the principles of C.A.D. 511.

This statement appears to be directed at the relationship between the exporter and the ultimate consignee of the exporter's U. S. export merchandise as subsidiaries of the same parent organization in the United States.

In view of the business relationship existing between the exporter and the consignee the court does not deem it unreasonable for an appraising officer to question, as to costs, the *bona fides* of invoice prices for merchandise passing between the subsidiaries, and to rely ultimately upon other criteria in finding what is believed by him to be a more objective, realistic cost structure. And although witnesses connected with these subsidiaries testified on plaintiff's behalf that the invoice prices represent actual sales, plaintiff has not adduced any evidence as to how these prices were arrived at by the exporter, that is to say, whether they reflect exclusively or partially, as the case may be, the judgments of the exporter. The court itself finds the agreement between the subsidiaries under which the *purchaser* of the automobiles bears the burden of the expense of the *manufacturer's* warranty to be somewhat unusual and not in the ordinary course of dealings between a manufacturer and a purchaser of the manufactured product. And the courts look with disfavor upon a cost accounting system such as has been testified to in this case which does not "choose" to allocate to export operations a fair proportion of overhead expenses relating to cost of production which are reasonably and normally chargeable to export operations. John V. Carr & Son, Inc. v. United States, 52 CCPA 62, C.A.D. 860. The merchandise in the *Carr* case consisted of metal parts for antivibration mounts which were sold by the Canadian manufacturer for home consumption and for exportation to the United States. The prices in the Canadian market were considerably higher than the prices for exportation to the states, attributable to cost accounting practices of the manufacturer in its allocation of general expenses in connection with manufacturing

costs. Under this system of accounting fixed items were charged only to the manufacturer's Canadian operations. Our appeals court upheld the action of the Appellate Term of the Customs Court in rejecting such accounting practice, and called attention approvingly to language of the Appellate Term which reads in part:

> We are of opinion, however, in view of the particular facts elicited in the instant case, and of the explanation of the differences between the Canadian costs of production, and of the export costs of production, that the appraiser was fully justified in adopting those amounts for overhead which included the fixed costs, hereinabove referred to, in estimating constructed value for the merchandise here undergoing appraisement.

Under the circumstances disclosed in the instant record the court is inclined to sustain the position taken by the appraiser as being a "reasonable ways and means" approach to the ascertainment of the "profit ordinarily added" by the exporter (accepting at face value plaintiff's proofs as to the unavailability of evidence of profits added by other Canadian automobile manufacturers). And there is nothing which the court can find in United States v. International Expediters, Inc., 40 CCPA 148, C.A.D. 511, cited by plaintiff in support of its position, which precludes elimination or rejection of transactions between subsidiary companies on the question of quantity of sales as influencing the profit factor in a cost of production valuation. The *International Expediters* case does not involve the question of the *weight* to be given to evidence of sales transactions in various markets, which is the question the court decides here.

The court agrees with plaintiff that manufacturing overhead is properly reflected as part of general expenses under paragraph (2) rather than as coming under paragraph (1). However, it is not shown in the record whether rearrangement of this item would have made any material difference in the appraiser's to-

tal calculations insofar as the statutory 10 percent minimum for general expenses is concerned. And it would not seem to make any difference if any of the general expense items were not paid for by the manufacturer and charged to the *involved cars* if in fact, as appears to be the case here, these items enter into the cost of production of *such* merchandise. See and compare, Ravenna Mosaics (Inc.) v. United States, 49 Treas.Dec. 699, T.D. 41503; University of Chicago Press v. United States, 24 Cust.Ct. 580, Reap.Dec. 7809.

Since plaintiff has failed to convince the court that as a matter of law the appraiser was not justified in using home market costs of identical or like cars and optional equipment in determining the cost of production values for the involved cars and optional equipment, and inasmuch as plaintiff does not attack the accuracy of the appraisement figures, it is not necessary for the court to pass upon the propriety of plaintiff's theory for determination of the cost of production of the optional equipment, founded as such theory is only on evidence relating to the involved imported cars.

Therefore, the court finds as matters of fact:

1. That the merchandise herein consists of 48 Studebaker automobiles with varying optional equipment, exported from Canada by Studebaker of Canada, Ltd., Hamilton, Ontario, to Studebaker Automotive Sales Corp., South Bend, Indiana, a related company, between June and November of 1964, and entered at the port of Buffalo, N. Y., by the plaintiff-customs broker.

2. That said merchandise was appraised on the basis of cost of production as defined in 19 U.S.C.A., section 1402 (f) (section 402a(f), Tariff Act of 1930, as renumbered by the Customs Simplification Act of 1956).

3. That the evidence in the record fails to establish that the appraised values are incorrect and that other values contended for by plaintiff are correct.

The court concludes as matters of law:

1. The presumption of correctness attaching to the appraised values has not been overcome.

2. Cost of production as defined in 19 U.S.C.A., section 1402(f) (section 402a (f), Tariff Act of 1930, as renumbered by the Customs Simplification Act of 1956) is the proper basis for determination of the values of the merchandise covered by the reappraisement appeal herein.

3. Such cost of production values are the appraised values.

Judgment will be entered accordingly.