**C. J. TOWER & SONS OF BUF-
FALO, INC.**

v.

**UNITED STATES.**

**Reappraisement R66/21972.**

United States Customs Court,
First Division, Appellate Term.

Oct. 6, 1970.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz and Norman C. Schwartz, New York City, of counsel), for appellant.

William D. Ruckelshaus, Asst. Atty. Gen. (Harold L. Grossman, New York City, trial atty.), for appellee.

Before WATSON, MALETZ, and RE, Judges.

RE, Judge:

This is an appeal from the decision and judgment of the trial court, dated February 19, 1969, in C. J. Tower & Sons of Buffalo, Inc. v. United States, 62 Cust.Ct. 822, R.D. 11630, 295 F.Supp. 1104, which upheld the appraisal values of certain new automobiles imported from Canada. The appeal involves 48 Studebaker passenger automobiles, 1964 and 1965 models, together with certain factory-installed optional equipment added to the basic vehicles. They were exported from Canada in 1964 by Studebaker of Canada, Ltd., and sold to Studebaker Automotive Sales Corp. (hereafter referred to as SASCO) at prices set forth on the invoices filed with the entries. Studebaker of Canada and SASCO are related firms being wholly owned subsidiaries of Studebaker Corp. of South Bend, Indiana. The automobiles shipped to the United States are identical by name, model number, and construction to those sold for home consumption in Canada. The completed automobiles are on the Final List published by the Secretary of the Treasury, T.D. 54521.

The parties are in agreement that the proper basis of value is "cost of production" under section 402a(f) of the Tariff Act of 1930, as renumbered by the Customs Simplification Act of 1956. The appellant is also in agreement as to the accuracy of the facts and figures that enter into the appraisement, "but not the conclusions" that have been drawn therefrom.

Section 402a(f) of the Tariff Act of 1930, as renumbered by the Customs Simplification Act of 1956, 19 U.S.C.A. § 1402(f) (1965) provides:

"(f) *Cost of production.*—For the purpose of this subtitle the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such

cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind."

In the view of the court below "the primary issue here is one of law as to whether home [Canadian market] or U. S. export market costs should have been utilized in ascertaining the cost of production value of the involved automobiles where such automobiles are the same in either market."

In sustaining the appraisement, the court below stated that the appellant had "failed to convince the court that as a matter of law the appraiser was not justified in using home market costs of identical or like cars and optional equipment in determining the cost of production values for the involved cars and optional equipment * * *." The court concluded, as a matter of law, that the presumption of correctness that attaches to appraised values had not been overcome, and consequently upheld the values found by the appraiser. See 28 U.S.C.A. § 2633 (1965).

The record in this case consists of the testimony of six witnesses for the appel-

lant and a quantity of exhibits. The entries, invoices, and all other papers transmitted by the Customs Service were also received in evidence. Since there is no dispute as to the actual figures or amounts which are pertinent to the appraisal, the fundamental question presented pertains to which figures. enter into the cost of production of the exported automobiles and the optional equipment.

In summary, the appellant contends that the proper method of computing the costs of production is the cost of producing the cars *which were exported to the United States,* and not the cost of producing the cars which were sold for home consumption in Canada. Appellant consequently contends that the costs of production incurred in producing the basic cars for export to the United States, should include first, the following costs as set forth in subexhibits A and E of appellee's exhibit B:

material (Canadian)

material (United States)

direct labor

tooling

engineering

Except for the fact that the appraiser also included "manufacturing overhead" in subdivision (1) of the cost of production statute, the appellant is in agreement with the appraiser in having included the foregoing costs.

As for the "general expenses" for the exported cars appellant contends that they should include the following costs, also taken from subexhibits A and E of appellee's exhibit B:

manufacturing overhead

administration overhead

■ Appellant agrees that the "manufacturing overhead" included by the ap-

praiser is the correct amount, but maintains, as held by the court below, that it is part of "general expenses" properly belonging in subdivision (2) of the "cost of production" statute, rather than in subdivision (1) where it was placed by the appraiser. The trial court's holding in this respect is deemed correct and is hereby affirmed.

As for the "administration overhead", appellant agrees that it ought to be properly treated as "usual general expenses" under subdivision (2) of the cost of production statute, but contends that it should be the "administration expense" listed in *U. S. export cost*, and not in *home market cost* as set forth in the previously referred to subexhibits A and E.

In keeping with appellant's construction of the cost of production statute, it disputes the inclusion of "warranty", "selling expense", and "advertising expense" as part of the cost of production of the exported automobiles, "since the record shows that the warranty was not an expense to the manufacturer but was assumed by the importer and since the manufacturer had no selling or advertising expense in manufacturing and exporting the cars which were exported to the United States." (Appellant's brief, p. 11)

It is agreed that there are no "packing" costs under subdivision (3) of the cost of production statute.

On the question of an "addition for profit", under subdivision (4) of the cost of production statute, appellant contends that the appraiser was "clearly in error in taking the *profit for home consumption* as the basis for calculating the cost of production of the basic automobiles." (Appellant's brief, p. 43) [Emphasis in original.] Conforming with its major contention, that the proper basis of cost of production relates to the *imported* automobiles, appellant

maintains that "profit" should be based on "U. S. export cost", as set forth in subexhibits A and E of appellee's exhibit B (except for the warranty). Hence, appellant asserts that the statutory profit should be the difference between the "U. S. export cost" and the invoice price of each car, but, as provided in the cost of production statute, "not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) * * *."

As for the optional equipment, appellant contends that the cost of production is represented by the cost of the materials only, and asserts that "the record shows that the labor and usual general expenses as well as profit * * *, were absorbed into, and reflected by, the cost and selling price of each automobile." (Appellant's brief, p. 12)

The question presented on this appeal is whether, under the cost of production statute previously quoted, the proper dutiable value is the cost of producing the merchandise exported to the United States, plus the overhead and profit on the exported merchandise, rather than the cost of producing "such or similar merchandise" for home consumption, including the general expenses and profit pertaining to the merchandise sold for home consumption.

The court below, in sustaining the appraisal, decided the question in favor of the government. The court thereby held that expenses not incurred in producing the imported automobiles were nevertheless part of their "cost of production" because they were incurred in producing "such or similar merchandise" for the home market. It thereby rejected appellant's principal contention that only those general expenses incurred in producing the *imported* automobiles were to be included in their "cost of production".

Based upon its construction or meaning of the words "such or similar mer-

chandise", in the cost of production statute, the court below stated that:

" * * * the court must disagree with the argument advanced by plaintiff that as to the elements of selling, advertising, warranty, and administration expenses, that only those expenses which enter into the cost of manufacturing the *involved cars* are properly included in the cost of production valuation thereof." 62 Cust. Ct. at 827, 295 F.Supp. at 1108. [Emphasis in original.]

It agreed with the position of the government "that the home market merchandise, being identical to that exported to the states, comes within the ambit of the statutory term 'such * * * merchandise' ". The court went on to state that, in its opinion, the words "such * * * merchandise", in the cost of production statute, "mean either the imported merchandise or merchandise identical to or like the imported merchandise." *Id.* at 828, 295 F.Supp. at 1108. It then added:

"Having arrived at a conclusion respecting the breadth of scope of the term 'such * * * merchandise' which would allow inclusion of merchandise other than the imported merchandise in the ascertainment of statutory manufacturing costs and general expenses costs, the next question to be considered is whether, on the evidence at bar, the appraiser was justified in calculating such and other statutory elements of costs upon the basis of home market merchandise rather than upon the basis of the imported merchandise." *Ibid.*

In affirming the determination of the appraiser, that the sales from Studebaker of Canada to SASCO were not actual sales but "merely billing prices", the court stated:

"In view of the business relationship existing between the exporter and the consignee the court does not deem it unreasonable for an appraising officer to question, as to costs, the *bona fides* of invoice prices for merchandise passing between the subsidiaries, and to rely ultimately upon other criteria in finding what is believed by him to be a more objective, realistic cost structure." *Ibid.*

As a result, the court below held that the cost of "warranty", "selling expense", and "advertising expense" should be included in the cost of production of the imported automobiles even though no such costs were incurred by the manufacturer in connection with the imported automobiles. Also, the "administration expense", incurred only in connection with automobiles sold for Canadian home consumption, was held to be a part of the cost of production of the automobiles exported to the United States.

Although there is no case which is squarely in point, several decisions, which have treated "cost of production", indicate that home market costs are no part of the cost of production of the merchandise exported to the United States. One of these decisions is the comparatively recent case of Gehrig Hoban & Co., Inc. v. United States, 57 Cust. Ct. 727, A.R.D. 210 (1966), decided under section 402a(f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, which is the pertinent statute in the case at bar. As in the case at bar, the merchandise therein was also on the Final List published by the Secretary of the Treasury, 93 Treas.Dec. 14, T.D. 54521, and the parties likewise agreed that the basis of appraisement was to be "cost of production".

In the *Gehrig Hoban & Co., Inc.* case, the merchandise consisted of cologne (Canoe 226) exported from France. By French law a so-called excise tax had to be paid on any alcohol used in merchan-

dise manufactured for consumption in France, whereas no tax was payable on alcohol used in merchandise manufactured for export. There was no question that the cologne was dutiable on the basis of "cost of production", and the parties "agreed that the only issue before the court for determination [was] the cost of materials and fabrication." 57 Cust.Ct. at 728.

The appraiser included the excise tax as part of the cost of materials of the exported cologne, and the trial court, in sustaining the appraisement, stated:

"Section 402a(f) (1), *supra*, does not restrict the consideration of the cost of materials and fabrication to the particular merchandise under question, but includes all such or similar merchandise." Gehrig Hoban & Co., Inc. v. United States, 54 Cust.Ct. 613, 618, R.D. 10947 (1965).

In other words, by virtue of the words "such or similar merchandise", in the cost of production statute, the trial court held that the excise tax was part of the statutory cost of materials for the imported merchandise, even if the tax was applicable only to sales in the home market.

In holding this to be error, and in reversing the trial court, the Second Division of this court stated:

"While Canoe 226 for domestic consumption and for export to the United States is identical, the only difference being in the cost of materials and labor, there is, nevertheless, a sufficient distinction which would permit our consideration of the lower priced materials and labor charges as being the figure to be applicable to the merchandise at bar. We are of the opinion that *section 402a(f) is concerned with merchandise for export to the United States and not for home consumption.* Hence, the higher costs for

materials and labor for the domestic product under the circumstances involved herein are not those costs which would ordinarily be considered in the manufacture of articles for export to the United States." 57 Cust.Ct. at 731 [Emphasis added.]

It would seem clear that the *Gehrig Hoban & Co., Inc.* case is favorable to the appellant, and supports its contention that costs not incurred in producing the exported merchandise are not part of the "cost of production".

Another case, also decided by the Second Division of this court and pertinent to our inquiry because it was decided under the "cost of production" statute, is Stockheimer & Harder, et al. v. United States, 58 Cust.Ct. 801, A.R.D. 218 (1967). The merchandise therein consisted of fishhooks imported from France. The question was whether a French social security tax, which was rebated to the manufacturer after the goods were exported to the United States, was part of the usual general expenses in determining the cost of the imported goods. The court held that the social security tax was not a proper component of the general expenses element of the cost of production of the merchandise. The court reasoned that "a tax which will be refunded is not an expense of doing business" since it is not "an expense sustained by the manufacturer in manufacturing or producing such or similar merchandise."

In discussing the *Stockheimer & Harder* case in its brief, the appellee states that it "does not support appellant's basic position because, as the record clearly revealed, the French tax factually was never an operating expense incurred in or applicable to the manufacture of the involved commodity, while in the case at bar, the record fails to show clearly and probatively that the disputed general expenses were not 'an expense

sustained by the manufacturer in manufacturing or producing such or similar merchandise'." (Appellee's brief, p. 24)

While the observation of the appellee, as stated, may be technically accurate, it cannot be denied that the *Stockheimer & Harder* case, like the *Gehrig Hoban & Co., Inc.* case, stands for the proposition that an expense not incurred, in connection with the exported merchandise, is not an element of cost or expense within the "cost of production" statute. Just as in the *Gehrig Hoban & Co., Inc.* case, where the excise tax was not payable on alcohol used in cologne exported from France, in the *Stockheimer & Harder* case, the social security tax was likewise not an element in the cost of production of the exported merchandise since it was rebated or refunded after the fishhooks were exported from France.

Appellant, in replying to the observation of the appellee, states that there is no quarrel regarding the words "such or similar merchandise", but rather as to whether those words pertain to the *imported* merchandise or merchandise sold for home consumption. Indeed, the very error complained of is that the trial judge "[h]aving arrived at a conclusion respecting the breadth of scope of the term 'such * * * merchandise'," allowed the "inclusion of merchandise other than the imported merchandise in the ascertainment of statutory manufacturing costs and general expenses costs * * *."

The appellant indicates that the issue is not whether the usual general expenses in the case of "such or similar merchandise" should be added since that is clearly set forth in the statute. "The issue", states the appellant, "is whether the usual general expenses are those incurred in the case of such or similar merchandise *sold for exportations* to the United States, rather than such or similar merchandise *sold for home consumption.* (Appellant's brief, p. 35) [Emphasis in original.] Appellant conse-

quently deems both the *Gehrig Hoban & Co., Inc.* and the *Stockheimer & Harder* cases not only in point and favorable to its position, but indeed controlling, since, in these cases, only those expenses incurred in connection with the *exported* merchandise were properly considered as reflecting the cost of production.

The court in the *Stockheimer & Harder* case cited the case of United States v. Alfred Dunhill of London, Inc., 32 CCPA 187, C.A.D. 305 (1945), which was also decided under the "cost of production" statute. In that case the question was whether a "British purchase tax" was part of the "usual general expenses" in calculating the cost of production of the merchandise. The tax, which was levied on the sale of goods to unregistered English buyers for home consumption, was held to have been improperly included in the cost of production of the exported goods. Since the tax was payable only when the goods were sold in England to unregistered buyers for home consumption, it did not constitute a "usual general expense" of the cost of production of the goods sold outside of England. It is the clear holding of the case that a tax not paid as to exported merchandise is not a part of the manufacturer's expense upon which his profit is calculated.

Another case which sheds some light on the question before the court is United States v. Ford Motor Company, 46 Cust. Ct. 735, A.R.D. 124 (1961). The *Ford Motor Company* case was decided under the "cost of production" statute, which, prior to renumbering under the Customs Simplification Act of 1956, was section 402(f) of the Tariff Act of 1930. The merchandise consisted of automobiles exported from Ireland. They were manufactured from component parts shipped from England and were assembled in Ireland for exportation to the United States. Irish import duties were not imposed because the automobiles were man-

ufactured with left-hand drives since they were to be exported to the United States.

Upon importation to the United States, the appraiser, in calculating the cost of production, included in the usual general expenses the Irish import duties which would have been applicable to parts imported into Ireland to be used in the fabrication of automobiles for home consumption in Ireland. In holding this to be error, the Third Division of this court held that the Irish import duties were not part of the usual general expenses in producing the exported automobiles. The court's decision was based upon the fact that the exported automobiles, with left-hand drives, were not "such or similar" automobiles to those manufactured for the home market which were equipped with right-hand drives.

This decision affirms the principle that an item of expense not actually incurred in connection with the imported merchandise is no part of the "cost of production". As stated by the court in the *Ford Motor Company* case, "at the time made relevant by the statute, no import duty had been paid or was due or had attached. Therefore, under the terms of the statute, it cannot be added to the cost of production of the materials entering into the imported merchandise." 46 Cust.Ct. at 743. The court consequently held that "it was error to add to the cost of production of this merchandise an amount representing an Irish import duty which never was paid or accrued or became due on the component parts of the merchandise but which might have been applicable to parts imported into Ireland to be used in the fabrication of automobiles for Irish consumption." *Ibid.*

It would seem clear, from the discussion of the foregoing cases, that an expense not in fact incurred ought not to enter into the "cost of production" of the merchandise, the subject of the appraisement. Differently stated, an item of expense not in effect or actually incurred is no part of the "cost of production".

It is this premise that gives substance to appellant's contention that the appraiser erred in using the *home market* costs for "selling expense", "advertising expense", and "administration expense". These costs did not reflect costs pertaining to the *imported* merchandise. Likewise, appellant maintains that it was error for the appraiser to include "warranty" cost since the record shows that it was assumed by the importer, and was not an expense to the manufacturer. Hence, the appellant maintains that since no warranty expense was incurred, it is no part of the cost of production of the *imported* automobiles.

Notwithstanding the efforts of appellee to minimize the pertinence of the cases cited by the appellant in support of its position, it cannot be denied that the statute in question, i. e., section 402a(f), expressly deals with and provides for the "cost of production of the *imported* merchandise." [Emphasis added.] Furthermore, it is to be noted that subdivision (1) of section 402a(f) speaks of "the date of exportation of the *particular merchandise* under consideration which would ordinarily permit the manufacture or production of the *particular merchandise* under consideration * * *". [Emphasis added.] Subdivision (3), dealing with the cost of containers, also speaks of the *particular merchandise* under consideration * * *". [Emphasis added.] It would seem clear that Congress, in the cost of production statute, was making provision for the *imported* merchandise, which is the *particular merchandise* undergoing appraisement. This conclusion, as to the purpose and intendment of the statute, finds support in the following statement of both the Ways and Means Committee of the House of Representatives, and the Finance Committee of the Senate, dealing with the cost of pro-

duction provisions of the Tariff Act of 1930:

" 'Cost of production' is the cost of producing the *imported article* abroad, with an addition for profit." H.Rep. No.7, 71st Cong., 1st Sess., on H.R. 2667 at page 167 (May 9, 1929); S. Rep.No.37, 71st Cong., 1st Sess., on H.R.2667, at page 69 (Sept. 4, 1929). [Emphasis added.]

Since Congress contemplated the "cost of producing the imported merchandise", what is the explanation or justification for the use of costs, or items of costs, not incurred in producing the *imported* merchandise, but which were incurred in the production of merchandise for the home market?

The court below, in construing section 402a(f), and more particularly, the words "such or similar merchandise therein", stated:

"The court is of the opinion that as used in paragraphs (1) and (2) of section 1402(f) [19 U.S.C.A. § 1402 (f)] the words 'such * * * merchandise' mean either the imported merchandise or merchandise identical to or like the imported merchandise." 62 Cust.Ct. at 828, 295 F.Supp. at 1108.

The court therefore concluded that the words "such * * * merchandise" in the statute "would allow inclusion of merchandise other than the imported merchandise in the ascertainment of statutory manufacturing costs and general expenses costs * * *." *Ibid.*

A careful reading of the decision of the trial judge will reveal that the relationship between the exporter and the ultimate consignee of the merchandise played a dominant role in the outcome of the case. The court, for example, quoted approvingly a finding of the examiner who did not consider the transactions in question to be "actual sales, but merely billing prices * * *." The court below stated:

"In view of the business relationship existing between the exporter and the consignee the court does not deem it unreasonable for an appraising officer to question, as to costs, the *bona fides* of invoice prices for merchandise passing between the subsidiaries, and to rely ultimately upon other criteria in finding what is believed by him to be a more objective, realistic cost structure." *Ibid.*

As a result of the "business relationship existing between the exporter and the consignee", the court below either minimized or disregarded the uncontradicted testimony of the "witnesses connected with these subsidiaries" who testified on plaintiff's behalf. *Ibid.* For example, as to the "warranty cost", which, according to the undisputed testimony, was not incurred by Studebaker of Canada because it was borne by SASCO, the trial court stated:

"The court itself finds the agreement between the subsidiaries under which the *purchaser* of the automobiles bears the burden of the expense of the *manufacturer's* warranty to be somewhat unusual and not in the ordinary course of dealings between a manufacturer and a purchaser of the manufactured product. And the courts look with disfavor upon a cost accounting system such as has been testified to in this case which does not 'choose' to allocate to export operations a fair proportion of overhead expenses relating to cost of production which are reasonably and normally chargeable to export operations. John V. Carr & Son, Inc. v. United States, 52 CCPA 62, C.A.D. 860." *Ibid.* [Emphasis in original.]

Commenting upon this statement in the decision below, the appellant remarks that "[s]ince it was SASCO, the importer, who sold the automobiles in the United States, we see nothing peculiar or suspicious in SASCO's assumption of the warranty. It seems perfectly plausible for the dealers in the United States, who bought the automobiles from

SASCO and not from Studebaker of Canada, to prefer that the warranty be assumed by SASCO. Obviously, the dealers in the United States were not in privity with Studebaker of Canada, but with SASCO." (Appellant's brief, p. 38)

It is noteworthy that the trial court cited, and proceeded to discuss, the case of John V. Carr & Son, Inc. v. United States, 52 CCPA 62, C.A.D. 860 (1965). Since the *Carr & Son, Inc.* case was decided under a different valuation statute, and not the "cost of production" statute pertinent to the case at bar, it is surprising to read in appellee's brief that the "principle enunciated" therein, by the Court of Customs and Patent Appeals, "is precisely applicable here, and clearly supports the Government's position." The appraisement in the *Carr & Son, Inc.* case was based upon "constructed value" as defined by section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. The appellant in that case contended that the merchandise, certain metal parts for antivibration mounts used in the production of automobiles, was subject to appraisement on the basis of export value as defined by section 402(b) of the Tariff Act of 1930, as amended. Alternatively, it was also claimed that the invoice prices represented the proper constructed value for the merchandise.

As indicated in the trial court decision of the *Carr & Son, Inc.* case, the "manufacturer and exporter of the parts was Clevite, Ltd., St. Thomas, Ontario, Canada, and the actual importer and ultimate consignee of the merchandise was Clevite Harris Products, Inc., Milan, Ohio", and that "the exporter and the importer are both wholly owned subsidiaries of Clevite Corp., Cleveland, Ohio * * *." John V. Carr & Son, Inc. v. United States, 48 Cust.Ct. 506, 507, R.D. 10138 (1962).

Since the transaction in the *Carr & Son, Inc.* case was between parties that were subsidiaries of a common parent corporation, it was specifically covered by section 402(g) dealing with "Transactions Between Related Persons" which provides:

"(1) For the purposes of subsection (c) (1) or (d) of this section, as the case may be, a transaction directly or indirectly between persons specified in any one of the subdivisions in paragraph (2) of this subsection may be disregarded if, in the case of any element of value required to be considered, the amount representing that element does not fairly reflect the amount usually reflected in sales in the market under consideration of merchandise of the same general class or kind as the merchandise undergoing appraisement. If a transaction is disregarded under the preceding sentence and there are no other transactions available for consideration, then, for the purposes of subsection (d), the determination of the amount required to be considered shall be based on the best evidence available as to what the amount would have been if the transaction had occurred between persons not specified in any one of the subdivisions in paragraph (2).

(2) The persons referred to in paragraph (1) are:

\* \* \* \* \* \*

(F) Two or more persons directly or indirectly controlling, controlled by, or under common control with, any person."

It must be noted that the statutory provision just quoted, dealing with transactions between related persons, is not applicable to the automobiles in the case at bar. As stated earlier, the automobiles in the instant case are on the Final List (T.D. 54521), and the parties have agreed that the proper basis of value is "cost of production" under section 402a (f) of the Tariff Act of 1930, as renumbered by the Customs Simplification Act of 1956.

In the *Carr & Sons, Inc.* case, the Court of Customs and Patent Appeals stated:

"The record clearly reflects the fact that prices for sales of identical items in Canada, were, as the court below found, 'considerably higher' than those upon which the exporter relies to support its contention." 52 CCPA at 65.

The substantial variance between the Canadian and American prices was explained "[t]hrough the accounting system employed by the exporter" whereby certain " 'fixed items' were charged only to Canadian operations and excluded from the computation of export costs." *Ibid.*

Under the statute pertinent in the *Carr & Son, Inc.* case, the issue was whether the selling price to a selected purchaser in the United States "fairly" reflected "the market value". The record there supported the finding of the Appellate Term of the Customs Court that there was no substantial evidence to establish the export value claimed, nor to show any other constructed values than those found by the appraiser. 52 CCPA at 70. In affirming the Customs Court, the Court of Customs and Patent Appeals stated:

"We agree with the court below that the record here does not justify the allocation of fixed costs solely and exclusively to production for home consumption and that a price which does not embrace all of the elements entering into the cost of production does not per se fairly reflect the market value of the item sold. * * *

"We think the record here supports the conclusion that the assignment of fixed costs to the extent and in the manner disclosed arbitrarily excludes a fair proportion of overhead expenses relating to cost of production which are reasonably and normally chargeable to export operations. We must therefore affirm the holding of the Customs Court that the record is insufficient to establish statutory export value." 52 CCPA at 68–69.

Certain aspects of the *Carr & Son, Inc.* case litigation are also pertinent. The trial court had held that export value was the proper basis for determining the value of the merchandise since it was "satisfied that the record evidence [supported] the contentions made by the plaintiff with respect to the existence and amount of export value * * *." 48 Cust.Ct. at 511.

The Appellate Term of the Customs Court, Judge Lawrence dissenting, reversed the trial court because the record showed that the "marked discrepancy between the Canadian home prices * * * and the prices at which they were sold for exportation to the United States," was "not attributable to expenses indigenous to Canadian operations and sales." United States v. John V. Carr & Son, Inc., 52 Cust.Ct. 599, 606, A.R.D. 165 (1964). The Court of Customs and Patent Appeals affirmed. Two judges of that court, Judge Rich and Judge Smith, however, wrote dissenting opinions indicating agreement with the views of the trial judge. Judge Rich quoted from United States v. Acme Steel Company, 51 CCPA 81, C.A.D. 841 (1964), the statement that "[i]f export value can be satisfactorily determined, *no other basis of value may properly be considered.*" 52 CCPA at 70. [Emphasis in original.] The *Acme Steel Company* case was decided under the same statute pertinent in the *Carr & Son, Inc.* case, and not the "cost of production" statute of the case at bar. Judge Rich, noting that the four Customs Court judges "who passed on the case below were equally divided", emphasized that "the only market value with which we are concerned is the section 402(b) *export* value, the *price* at the time of exportation at which the merchandise was freely offered, not for sale in Canada, but *for exportation to the United States.*" 52 CCPA at 70–71. [Emphasis in original.] Judge Rich added:

"It seems to me, as it did to the trial judge and Judge Lawrence, [who dissented below] that the record is suf-

ficient to establish that that price was the invoice price." 52 CCPA at 71.

Since the statute in the *Carr & Son, Inc.* case spoke of the market value "for exportation to the United States", Judge Rich questioned "the relevancy of sales in the home market of the exporting country." 52 CCPA at 72–73.

Judge Smith, in his dissent, pointed out that since the government "produced no evidence", it was "necessarily bound by the record * * * and, in his opinion, "[o]n that record there [was] no basis upon which to find that the invoice price did not reflect the market value of the imported merchandise." 52 CCPA at 74.

Clearly, therefore, the *Carr & Son, Inc.* case can only be "precisely applicable" if a case were to arise under the statute which provides an appraisement based upon "constructed value", and the issue is whether the selling price to a selected purchaser in the United States "fairly reflects" the "market value of the merchandise" under section 402(f) (1) (B) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

The "constructed value" in the *Carr & Son, Inc.* case, which was upheld by the Appellate Term of the Customs Court and affirmed by the Court of Customs and Patent Appeals, was fully justified by the findings that the Canadian manufacturer "arbitrarily" allocated certain fixed costs to the price of goods sold in Canada thereby enabling it to reduce its price for the merchandise sold to its United States parent company. Clearly, under those circumstances, i. e., the findings made, the importer could not properly contend that the dutiable value was the invoice price, which had been reduced by the fixed costs which should have been included in the selling price of the goods exported to the United States.

It is to be noted that, even apart from the entirely different statute which gov-

erned in the *Carr & Son, Inc.* case, the underlying premise of that case is that the fixed costs allocated to the Canadian goods were part of the cost of production of the merchandise *exported to the United States.* Appellant, in the case at bar, not only would not quarrel with such a premise, but would also insist that *only* those costs attributable to the cost of production of the *exported* merchandise should be included as a part of the "cost of production" under the statute pertinent herein which deals with "the cost of production of imported merchandise."

In the case at bar the appraiser and the court below were concerned with the *bona fides* of the invoice prices as though the legal question presented, as in the *Carr & Son, Inc.* case, was whether they fairly reflected the *market value.* This was accomplished by construing the words "such of similar merchandise" in such a manner as to permit the utilization of home market costs. The pertinent statute presently before the court, however, deals with the *cost of production* of the *imported* merchandise. It contains provisions for a minimum of 10 per centum of the cost of materials for general expenses, and an addition for profit of a minimum of 8 per centum of the total cost of materials and general expenses.

Although the conclusion of the appraiser was apparently based upon the business relationship between the exporter and the consignee, the record nevertheless conclusively shows that the United States export transactions were actual sales and not "merely billing prices". There is no evidence whatever in the record that would, in any way, contradict statements such as those of the president of Studebaker of Canada, a professional chartered accountant who supervised all activities of the company, that

"We sold automobiles to SASCO. We delivered them to the border at which

time they, SASCO, took possession of the car and at which time title was changed."

In the present case the fact is indisputable that Studebaker of Canada did not incur any "warranty cost". Unlike the *Carr & Son, Inc.* case, therefore, the "warranty cost" was not a part or element of the cost of production of the imported automobiles. The testimony of appellant's witnesses as to the selling and advertising expenses is equally clear and likewise stands unrefuted. A reading of the record will leave no doubt that selling and advertising expenses were not incurred by Studebaker of Canada "[b]ecause SASCO, the American company", in the words of one witness, "engaged in its own selling and advertising efforts in the United States * * *". On the basis of the record before the court, the evidence is overwhelming that Studebaker of Canada incurred no "warranty cost", and no selling and advertising expenses in connection with the exported automobiles since these costs or expenses were borne by SASCO in the United States. The court, therefore, on the record before it, must find that these items are not a part of the cost of production of the exported automobiles, and should have been excluded in computing "cost of production" under the pertinent statutory provision.

Since the court is of the view that the "cost of production" statute applicable in the case at bar pertains to the "cost of production of the imported merchandise", it is likewise held that it was also error for the appraiser to take the "administration expense" from the "home market cost" rather than from the "U. S. export cost". (Pages 9–10 of subexhibit E of defendant's exhibit B; page 3 of subexhibit A of defendant's exhibit B).

Appellee states that the question presented pertaining to profit is one of first impression. It states that it has been "unable to find any judicial precedent involving so-called intercompany sales with respect to determining the usual statutory profit for cost of production purposes, particularly when it becomes an advantage or expedient to both related companies to sell between themselves at a loss, without a profit, or with a commercially insignificant profit." (Appellee's brief, pp. 26–27) Appellee indicates that subdivision (4) of the cost of production statute requires an addition for profit "equal to the profit ordinarily added by manufacturers of merchandise of the same class or kind in the country of manufacture." This is, of course, true but appellee ignores the important proviso of subdivision (4) that states that the addition for profit cannot be "less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2)" of the cost of production statute. Once again the views of the appellee are entirely beclouded by the relationship of the parties and the assumption that the transactions in question were not actual sales. It is for this reason that it does not regard the case of United States v. International Expediters, Inc., etc., 40 CCPA 148, C.A.D. 511 (1953), as controlling on the question of profit. Hence, appellee asserts that the *International Expediters, Inc.* case has no pertinence or relevance to the case at bar for in that case, "the decision was factually predicated on actual sales between two totally unrelated companies, while in the instant case the so-called sales, which despite the testimony of the interested witnesses * * * we do not concede were actual sales, were between two related companies apparently indulging in bookkeeping operations which would benefit the parent company duty-wise." (Appellee's brief, Pages 27–28)

Apart from the relationship, which has been referred to repeatedly, appellee's factual assertions find no justification in the record. As stated by Judge Smith in his dissenting opinion in the *Carr & Son, Inc.* case, appellee is "necessarily

bound by the record", and this record shows without contradiction that the U.S.A. export transactions were actual sales. Nothing in this record would suggest that the invoice prices were not *bona fides* or not arrived at in good faith. Furthermore, it is to be noted that there is no requirement under the statute that appellant demonstrate the manner in which it arrived at the sales prices. As indicated previously, the statute expressly provides that the addition for profit must not be less than 8 per centum of the sum of the cost of materials and fabrication and usual general expenses. It is also relevant to note that appellant tried diligently, but without success, to obtain information as to the profit added by other Canadian manufacturers of automobiles.

Since this court finds that the transactions under scrutiny represented actual sales, it is of the opinion that the question of profit is answered by the reasoning and holding of the case of United States v. International Expediters, Inc., etc., *supra*. In that case it was agreed that "cost of production" was the proper basis of value and the question presented pertained solely to the correct amount of profit that was to be added under the fourth paragraph of the cost of production statute. The merchandise consisted of artists' colors in tubes and it was stipulated that sales were made to wholesalers at a discount of 40 percent, and to retailers at a discount of 33⅓ percent. The sales to the wholesalers represented the major quantity of the merchandise sold, while the sales to the retailers represented the greater number of sales.

The appraiser based the addition for profit upon the sales to the retailers which represented the greater number. The importer claimed that the profit should be based on the sales to the wholesalers which represented the major quantity sold. In sustaining the contention of the importer, the Court of Customs and Patent Appeals quoted the following

from the decision of the Second Division of the Customs Court, United States v. International Expediters, Inc., etc., 28 Cust.Ct. 594, 597, Reap.Dec. 8105 (1952), stating that it also shared those views:

"In this connection, it is proper to consider what we believe to be a basic principle of business economics, namely, that the profit motive is the spark plug of all business endeavor in the Western World. The manufacturer counts the profit he receives as the measure of the success or the failure of his business. His concern is to produce and sell in quantity so that his margin of profit, actual, not percentage wise, shall be as great as it is possible for him to make it. Thus, from a manufacturer's standpoint, his ordinary profit is that derived from the sale of the greatest portion of his merchandise, and the number of sales required in the disposition of a minor portion of his products at a greater percentage profit, but a smaller realized profit, is not, in business practice, indicative of ordinary profit.

"We think we should take cognizance of the fact that the manufacturer's emphasis is upon units sold, rather than upon sales made, and construe the phrase 'the profit which ordinarily is added' in a manner which recognizes that business precept. As applied to the instant case, since the greater quantity of this merchandise was sold to wholesalers, with the consequent realization of the greater proportion of returns, sales to wholesalers should, in this case, constitute the basis upon which the profit ordinarily added is to be determined." 40 CCPA at 159.

The Court of Customs and Patent Appeals upheld the construction of the Appellate Term of the Customs Court that held that the words "profit which ordinarily is added" meant that profit derived from the greater quantity of sales. The court approved this, holding that it

was deemed to be in harmony with the principle stated in various other decisions of that court.

■ It is, therefore, clear that the *International Expediters, Inc.* case is precedent for the proposition that the "profit which ordinarily is added" is the profit derived from the *greater quantity sold.* In the case at bar it has been stipulated that more cars were exported by Studebaker of Canada to the United States than were sold by Studebaker of Canada in the home market. According to subexhibit A of defendant's exhibit B, 10,497 automobiles were sold to SASCO whereas only 7,079 cars were sold for the home market during the same pertinent period. In view of the principle set forth in the *International Expediters, Inc.* case, the appraiser was in error in taking the profit for home consumption as the basis for calculating the addition for profit. The court consequently holds that the profit which was "ordinarily added" by Studebaker of Canada during the period in question was the profit which was added in the sales to the United States.

■ The appellant has also raised the question as to the optional equipment of the automobiles, and submits that the cost of production of the optional equipment was the cost of materials only. The trial court did not reach the issue of the cost of production of the optional equipment. Clearly, what has been stated in this opinion on the question of home consumption costs is equally applicable to the optional equipment on the imported automobiles. Consequently, the court deems it to have been error for the appraiser to have taken as the cost of production of the optional equipment the selling price for home consumption. The optional equipment, for classification purposes, is an integral part of the automobile and, except for the additional material required for the optional equipment, the cost of production of the op-

tional equipment is included in the cost of production of the automobile. See Gallagher & Ascher Company v. United States, 52 CCPA 11, C.A.D. 849 (1964).

The uncontradicted evidence of appellant establishes that the cost of production of the optional equipment is the cost of materials only, as set forth in plaintiff's exhibit 1. The undisputed testimony of two witnesses for appellant indicates clearly that the labor and usual general expenses, as well as profit, for the optional equipment, were absorbed into and reflected in the cost and selling price of each automobile. In view of the testimonial record the court finds that the cost of production of the optional equipment is the cost of materials only.

For the reasons set forth herein, the court holds that it was error for the trial court to affirm the appraiser's inclusion of warranty, selling expense, advertising, and administration costs incurred in producing automobiles for home consumption, and not incurred in producing automobiles exported to the United States. The court also holds that the lower court erred in holding, in absence of proof, that the transactions between Studebaker of Canada, Ltd. and SASCO were mere billing prices and not sales, and should therefore have been disregarded in the determination of the statutory profit. The court further holds that the lower court committed error in failing to hold that the cost of the optional equipment, on the record presented herein, was the cost of materials only.

In view of the foregoing, the decision of the court below is reversed to the extent modified by the findings of fact and conclusions of law below.

The court finds as matters of fact that:

1. The merchandise in this appeal for reappraisement consists of 48 Studebaker passenger automobiles with varying factory-installed optional equipment.

2. The automobiles were manufactured by Studebaker of Canada, Ltd., Hamilton, Ontario, in part of U. S. components, were sold to Studebaker Automotive Sales Corp., South Bend, Indiana, a related company, between June 18th and November 13th, 1964, and entered at the port of Buffalo, New York, by the appellant as customs broker.

3. The automobiles appear on the Secretary of the Treasury's Final List, 93 Treas.Dec. 14, T.D. 54521.

4. The parties agree that the proper basis of valuation is the "cost of production" as defined in section 402a(f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

5. During the period of time pertinent to this case, Studebaker of Canada, Ltd. exported more automobiles to the United States than it sold in the Canadian home market.

6. The appraiser calculated the cost of production of the basic automobiles by taking the cost of labor and material, manufacturing overhead, tooling, and engineering, from the "U.S. Export Cost", set forth in subexhibits E and A of appellee's exhibit B, and by taking the cost of warranty, selling expense, advertising, and administration from the "Home Market Cost" set forth in the aforesaid subexhibits E and A, and by basing the profit to be added upon the "Home Market Cost".

7. The correct cost of labor and material, tooling and engineering is as appraised, and is set forth in amended schedule "A" attached hereto.

8. The correct amount of "manufacturing overhead" is as appraised, and is set forth in amended schedule "A" attached hereto, but should be part of the "usual general expenses" under subdivision (2) of the cost of production statute.

9. The correct cost of "administration" should be the cost of administration for exportation to the United States, and is set forth in amended schedule "A" attached hereto.

10. The manufacturer of the controverted automobiles incurred no costs of warranty, selling expenses or advertising, and those costs are no part of the cost of production under the pertinent statutory provision.

11. It is agreed by the parties that there were no containers or coverings, or any other costs, charges or expenses under subdivision (3) of the pertinent cost of production statute.

12. The cost of production of the optional equipment was the cost of materials only, since all other costs and profit were absorbed into and were reflected by the cost and selling price of the automobiles.

13. The correct cost of materials for the optional equipment is stated in amended schedule "A" attached hereto.

14. Thirty-four of the controverted automobiles were sold by Studebaker of Canada, Ltd. to SASCO at a profit of 8 per centum or more of the U. S. export cost. The correct addition for profit for these thirty-four automobiles is the difference between the selling price and the U. S. export cost as set forth in amended schedule "A" attached hereto. The remaining fourteen automobiles were sold either at a profit of less than 8 per centum of U. S. export cost, or at a loss.

As matters of law the court holds that:

1. The cost of production of the imported merchandise, as defined in section 402a(f) of the Tariff Act of 1930, as amended, is the proper basis for determining the value of the merchandise the subject of this reappraisement appeal.

2. The correct cost of production values of the imported merchandise are indicated in findings of fact numbered 7, 8, 9, 12, 13, and 14.

Judgment will be entered accordingly.

AMENDED SCHEDULE "A"

| Entry No. | Labor, Material, Tooling and Engineering | Manufacturing Overhead | Administration | Profit Sec. | Total cost of production of basic automobile | Cost of Production of Optional Equipment (Cost of Materials) |
|---|---|---|---|---|---|---|
| | Sec. 402(f) (1) | Sec. 402(f) (2) | | 402(f)(4) | Can. $ | Can. $ |
| 32561 | | | | | | |
| Car No. | | | | | | |
| C102984 | $1282.45 | $200.16 | $34.50 | $121.37 | 1638.48 | 18.45 |
| C103070 | 1282.45 | 200.16 | 34.50 | 121.37 | 1638.48 | 156.84 |
| C504018 | 1406.16 | 214.24 | 34.91 | 362.16 | 2017.47 | 225.19 |
| C503831 | 1526.49 | 269.89 | 35.21 | 331.97 | 2163.56 | 191.58 |
| C504016 | 1469.87 | 263.40 | 35.46 | 385.49 | 2154.22 | 243.03 |
| C503468 | 1601.29 | 263.50 | 33.93 | 300.30 | 2199.02 | 240.43 |
| C103101 | 1244.44 | 193.35 | 35.15 | 117.84 | 1590.78 | 18.45 |
| C103037 | 1282.45 | 200.16 | 34.50 | 121.37 | 1638.48 | 157.44 |
| C103089 | 1282.45 | 200.16 | 34.50 | 121.37 | 1638.48 | 157.74 |
| C503960 | 1406.16 | 214.24 | 34.91 | 350.61 | 2005.92 | 199.89 |
| C504050 | 1406.16 | 214.24 | 34.91 | 305.21 | 1960.52 | 188.80 |
| C504046 | 1406.16 | 214.24 | 34.91 | 257.32 | 1912.63 | 145.97 |
| C103087 | 1318.07 | 201.82 | 34.09 | 214.81 | 1768.79 | 205.54 |
| C504059 | 1471.92 | 215.70 | 36.37 | 319.78 | 2043.77 | 285.54 |
| C504047 | 1325.08 | 196.57 | 35.08 | 276.89 | 1833.62 | 220.05 |
| C103104 | 1282.45 | 200.16 | 34.50 | 124.40 | 1641.51 | 175.09 |
| C102933 | 1427.60 | 263.55 | 35.64 | 157.61 | 1884.40 | 172.26 |
| C103115 | 1282.45 | 200.16 | 34.50 | 121.37 | 1638.48 | 178.78 |
| 32754 | | | | | | |
| C503963 | 1429.98 | 210.39 | 32.97 | 240.30 | 1913.64 | 224.32 |
| C503993 | 1371.92 | 215.70 | 36.37 | 129.92 | 1753.91 | 283.35 |
| C503992 | 1406.16 | 214.24 | 34.91 | 332.50 | 1987.81 | 190.93 |
| C504026 | 1469.87 | 263.40 | 35.46 | 173.08 | 1941.81 | 157.12 |
| C504052 | 1526.49 | 269.89 | 35.21 | 280.30 | 2111.89 | 166.12 |
| C504028 | 1325.08 | 196.57 | 35.08 | 266.92 | 1823.65 | 222.70 |
| C103094 | 1282.45 | 200.16 | 34.50 | 121.37 | 1638.48 | 19.66 |
| C103106 | 1282.45 | 200.16 | 34.50 | 133.29 | 1650.40 | 185.50 |
| C503938 | 1293.04 | 201.15 | 36.17 | 122.43 | 1652.78 | 119.68 |
| C504029 | 1335.26 | 213.20 | 36.20 | 247.60 | 1901.58 | 246.27 |
| C503985 | 1406.16 | 214.24 | 34.91 | 451.36 | 2106.67 | 282.36 |
| C103064 | 1282.45 | 200.16 | 34.50 | 121.37 | 1638.48 | 53.74 |
| C103118 | 1244.44 | 193.35 | 35.15 | 117.84 | 1590.78 | 44.21 |
| C503903 | 1293.04 | 201.15 | 36.17 | 214.22 | 1744.58 | 191.50 |
| C504056 | 1469.87 | 263.40 | 35.46 | 352.33 | 2121.06 | 217.99 |
| C503932 | 1406.16 | 214.24 | 34.91 | 387.03 | 2042.34 | 243.76 |
| C503918 | 1406.16 | 214.24 | 34.91 | 365.72 | 1921.03 | 152.37 |
| C103072 | 1282.45 | 200.16 | 34.50 | 121.37 | 1638.48 | 157.13 |
| C504091 | 1469.87 | 263.40 | 35.46 | 209.74 | 1988.47 | 141.87 |
| C504120 | 1325.08 | 196.57 | 35.08 | 220.45 | 1777.18 | 157.55 |
| C504000 | 1335.26 | 213.20 | 36.20 | 153.31 | 1737.97 | 130.23 |
| C102986 | 1282.45 | 200.16 | 34.50 | 121.37 | 1638.48 | 22.12 |
| C103155 | 1244.44 | 193.35 | 35.15 | 128.39 | 1601.33 | 201.12 |
| C103140 | 1282.45 | 200.16 | 34.50 | 121.37 | 1638.48 | 21.41 |
| 15035 | | | | | | |
| C511945 | 1624.35 | 161.74 | 23.45 | 573.80 | 2383.34 | 247.11 |
| C511913 | 1668.80 | 163.05 | 23.45 | 479.62 | 2334.92 | 219.45 |
| C111529 | 1476.89 | 158.63 | 23.45 | 326.89 | 1985.86 | 143.57 |
| C511933 | 1624.35 | 161.74 | 23.45 | 331.10 | 2140.64 | 115.86 |
| C511948 | 1476.89 | 158.63 | 23.45 | 443.99 | 2102.96 | 143.11 |
| C110633 | 1445.13 | 150.16 | 23.45 | 177.37 | 1796.11 | 73.32 |

Note 1. Profit listed above equals difference between invoice price and export cost (sum of labor, material, tooling, engineering, manufacturing overhead, and administration) except in the case of the 14 cars which were sold at a profit of less than 8% of said export cost, where the profit listed above equals 8% of said export cost.

Note 2. Total cost of production of basic automobile listed above includes all equipment.